# McTeers v. Perkins.

*Bill in Equity to set aside Fraudulent Conveyance.*

1. *Fraudulent conveyances; gifts from husband to wife* —Gifts from husband to wife are constructively fraudulent as against existing creditors; and the burden of proof is on the donee to show that such gifts were prior to the contraction of the husband's debts.

2. *Same; when conveyance from husband to wife; burden of proof.* When a creditor attacks as fraudulent a conveyance by his debtor subsequent to the contraction of the debt, the burden is on the grantee to show a valuable and adequate consideration for such conveyance and the *bona fides* of the transaction; and the fact that the grantor and grantee in such conveyance were husband and wife will be taken into consideration in weighing the evidence relating to the *bona fides* of such transaction.

APPEAL from the Birmingham City Court, in Equity. Heard before the Hon. WILLIAM W. WILKERSON.

The bill in this case was filed by the appellants as creditors of B. F. Perkins against said B. F. Perkins and his wife, Ella G. Perkins; and sought to have certain conveyances from B. F. Perkins to his wife set aside as fraudulent, and the property conveyed therein and other property described in the bill subjected to the payment of the debts of the complainants. The facts of the case are sufficiently stated in the opinion.

On the final submission of the cause, on the pleadings and proof, the chancellor decreed that the complainants were not entitled to the relief prayed for, and ordered the bill dismissed. Complainants appeal from this decree, and assign the same as error.

LANE & WHITE, for appellants.—1. When a sale of goods by a debtor is attacked as fraudulent by creditors whose debts were in existence at the time, the onus is on the defendant to prove an adequate and valuable consid-

eration, and if the purchaser is a near relative of the debtor, clearer and more conclusive proof is required than when they are strangers.—*Marx v. Leinkauff*, 93 Ala. 453 ; *Bank v. Smith, Ib.* 97 ; *Bell v. Kendall, Ib.* 489 ; *Hubbard v. Allen*, 59 Ala. 283.

2. Property bought by a husband and placed in wife's name, may be subjected in equity by creditors of husband, to their debts.—*Smith v. Cockrell*, 66 Ala. 64; *Ruse v. Bromberg*, 88 Ala. 619.

3. Money handed by a wife to a husband, for which she received no evidence or security until he became insolvent, will not furnish a valid consideration to support a conveyance to her as against his creditors.—*Lewis v. Brunjer*, 34 N. J. Eq. 19.

4. Where the husband receives the income and profits of his wife's separate estate, and then when pressed by his creditors conveys property bought with this income to his wife, in payment of the same, the conveyance is fraudulent and void as to creditors.—*Early & Lane v. Owens*, 68 Ala. 171.

5. Where a husband conveys property to a wife in payment of a debt, he can not charge himself with interest on the debt so as to swell the consideration and make it a valuable and sufficient consideration to support a conveyance of the property to his wife in payment thereof, as against his creditors.—*Bank v. Smith*, 93 Ala. 97.

LEA & BELL, *contra*.

COLEMAN, J.—The present bill was filed by appellants, as creditors of B. F. Perkins, to reach and subject to the payment of their debts certain real estate, the legal title to which was in the name of his wife, E. G. Perkins. The debts are admitted to be due complainants, and the defense is rested upon the contention that the money used in the purchase of certain parts of the realty, belonged to the wife, received from her husband in part payment of his indebtedness to her, and the remainder of the property was deeded in payment of the balance due her. The bill avers, and by agreement of counsel it was admitted, that a portion of the debts were owing prior to January, 1890, how long before is not stated, and that others were contracted June 29th, 1889, November 2d, 1888, and September 20th, 1888. It is ad-

mitted that on August 7th, 1890, the debtor, B. F. Perkins, handed to his wife ten thousand dollars in cash, and that this money was deposited in bank by her to her credit, and that she checked it all out in her own name. Both husband and wife testify, that at the time the money was given to her, it was agreed that she should pay herself in full, and the remainder should be paid back to him. There had been no settlement or statement between the wife and husband at the date of this transaction, and neither knew exactly how much she claimed to be due her, nor was there any attempted ascertainment of his indebtedness at any time prior to the filing of this bill. She held no written evidence of this indebtedness. The husband and wife were the only witnesses examined as to his indebtedness. She testifies that of the money paid her she invested twenty-two hundred and fifty dollars in the purchase of some of the lots in controversy, and that she took the lot upon which they reside as a homestead in payment of the balance "she had let her husband have," and that was due her from him. The homestead lot was valued at forty-five hundred dollars—she agreed to take it at that price. These two sums make six thousand, seven hundred and fifty dollars. The sources of the husband's indebtedness to her are stated as follows: That in the year 1880 or 1881, she realized as a profit on the sale of a lot in Virginia, which her husband had bought for her on a credit, seven hundred dollars, and that she made a net profit on a small farm rented by her husband for her in Virginia about the same time something over two hundred dollars, which she loaned her husband and which was invested by him in an outfit for grading railroads in Georgia. That in the year 1882 or 1883, while they were living in Georgia, her husband collected in money from her grandfather's estate seven hundred dollars, which he also invested in the railroad outfit. The statutes of Georgia were not offered in evidence, at least they do not appear in the record as a part of the evidence, and we must presume the common law prevails in that State. We will refer to this source of liability hereafter. In 1882 or 1883, shortly after receiving this money, they moved from Georgia to Birmingham, Ala., and brought with them the property in which her money had been invested. Conceding for the argument

that this property became impressed with the character of her statutory estate, as soon as they arrived in Alabama, under our laws at that period, the husband became entitled to the income and is not chargeable with interest at least until after the act of the legislature of February 28th, 1887.—Acts of 1886–87, pp. 80–81. Adding the interest to the principal claimed, and on August 7th, 1890, the amount would proximate $2,050. She claims that her husband gave her while in Kentucky, we presume from the evidence in the year 1889, twenty-three hundred dollars in money, in this way: She says that her husband gave her money frequently to defray the expenses of their children at school, and that she saved out of this amount, including about fifty dollars worth of hogs, about $1,200, which she loaned to her husband; that her husband was a contractor at the time with a railroad; that by the terms of the agreement, the party for whom the work was being done retained ten per cent, to insure the completion of the work; that he became embarrassed and was attached, and being unable to complete the contract, he forfeited the ten per cent retained, which was claimed by the contractor; that subsequently the contractor made her a present of it, which amounted to eleven hundred dollars, and that she loaned this to her husband. It is said that "nothing is impossible." To say the least of it, the arrangement must have been highly satisfactory to the husband. The twelve hundred dollars saved and the eleven hundred made the twenty-three hundred dollars she claims to have loaned her husband. Interest on twenty-three hundred dollars for the year 1889 and to Aug. 7th, 1890, added to the principal would approximate $2,576, which added to the amounts loaned in Georgia and brought to Alabama, $2,050, would make a total of $4,626. This calculation is made upon the basis of allowing her every dollar she can claim, with interest, for which she has received in money and property $6,750, an excess of over two thousand dollars.

The rule is, that when a creditor attacks a conveyance made by his debtor as fraudulent, and his debt was contracted prior to the conveyance, the burden is on the grantee to show by satisfactory evidence, that the consideration of the conveyance was *bona fide* and adequate, and when the transaction is

between near relatives, the evidence must be weighed in connection with the fact of such relationship. The evidence establishes to our mind that the husband in his transactions in Alabama used his wife's name, to hinder and defraud his creditors. She signed deeds of conveyances, and checked out money in her name payable to his order without knowing or inquiring for what purposes. He had property conveyed to her, without consulting with her, and without her knowledge, and she drew checks and executed conveyances when necessary to suit his purposes. The testimony of his partner Hobby, a disinterested witness, is positive that he put in the railroad business only nine hundred and forty dollars. This was the amount credited to Perkins on the partnership books and the amount credited to him on the settlement of their partnership matters. Hobby is positive of the amount, and his evidence on this point was not controverted. Leaving out of consideration the right of the husband at common law to the money collected by him while in Georgia, and weighing the evidence with fairness to the rights of creditors, she should not be allowed an amount exceeding nine hundred and forty dollars. The husband can not be charged with interest as against his creditors, except from February 28th, 1887.—*Early & Lane v. Owens*, 68 Ala. 171 ; *Bank v. Smith*, 93 Ala. 97.

As we have seen, some of the debts of complainants were contracted in the year 1888, and others in 1889. The burden was on the wife to show the twelve hundred dollars given to her by her husband while in Kentucky preceded the contraction of these debts. This burden has not been discharged. All such gifts being without consideration were constructively fraudulent against existing creditors. We have not overlooked the fact that on the 10th of April, 1884, a lot on Avenue B was conveyed to E. G. Perkins and Hobby for a recited consideration of twenty-two hundred and fifty dollars. The testimony shows that this lot was in fact partnership property of Perkins and Hobby, paid for by the firm. Hobby testifies that he did not know the conveyance had been executed to the wife of Perkins and himself until some time afterwards, having occasion to borrow money for the firm, he discovered it had been conveyed to the wife of Perkins and himself. The evidence shows, that

E. G. Perkins conveyed this property to the firm of Perkins & Hobby, reciting in the deed that it had been conveyed to her by mistake, and that it was the property of the partnership. This lot was considered, treated and sold by the firm of Perkins & Hobby as partnership property. The sale of the lot, was at a considerable profit. She now testifies, that there was no mistake in the first deed, that it was conveyed to her in payment of her husband's indebtedness, and that the recitation in the deed, that it had been conveyed to her by mistake, was untrue. We cannot uphold this contention, in the light of all the facts, against *bona fide* claims of creditors of her husband. All the circumstances sustain the evidence of Mr. Hobby in regard to this transaction. In addition to his evidence, we are unable to figure out that her husband's indebtedness to her at that time was so large as that expressed as the consideration of the conveyance.

There is another sum of money not satisfactorily accounted for. There is evidence tending to show that Perkins handed to his wife a greater sum than $10,000, but this amount is admitted. Of this sum she let her husband have, according to his evidence, and hers does not conflict with it, $6,670, leaving in her hands in bank three thousand, three hundred and thirty dollars. She accounts for $2,250 invested by her in the purchased lots. There remains with her one thousand and eighty dollars in cash of which she has given no account, and which must be credited on her husband's indebtedness.

We are clearly of the opinion that complainants are entitled to relief, and this court will render the decree the city court should have rendered. It is considered, adjudged and decreed that the decree of the city court be and the same is reversed and annulled. It is further decreed that complainants are entitled to relief, and that the property mentioned in the decree, except as hereafter provided, be condemned and sold to satisfy the demand of the complainants. It is referred to the register to state an account, ascertaining the amount due each of complainants, and also the amount of the indebtedness of B. F. Perkins to his wife E. G. Perkins on the date of the 7th day of August, 1890. In stating the account, he will allow the claim for $940, with interest from the 28th day of February, 1887. He will allow her claim of

$2,300, loaned by her in the State of Kentucky and interest thereon also; but the claim for $1,200 is subject to the debts of those creditors whose claims were owing prior to the gift of the husband, to-wit, $176, contracted in June, 1889, $100, contracted in September, 1888, and $35, contracted in November, 1888. The register will charge her with $1,080, money paid her by her husband on the 7th of August, 1890, and also $2,250 invested in the purchase of lots described in the bill of complaint, and forty-five hundred dollars, the value placed upon the lot occupied as a homestead. He will also report the present value of the homestead. After the register has made his report and the same has been confirmed, and a reasonable time allowed by the court for the payment of the excess or so much as may be necessary, to satisfy the cost of the suit, and the indebtedness due complainants, if the same shall not have been paid, the court will make an order for the sale of the property, or so much as may be necessary to satisfy said cost and claims. The court must allow the claim of the homestead exemption to the respondent, Ella G. Perkins, and have the same set apart and exempted according to its present value as prescribed by statute, where the value of the homestead exceeds or is less than two thousand dollars.

Reversed, rendered and remanded.

