C. E. Foster, *et al.*, v. L. Elmer Thornton.

179 So. 882.
Division A.
Opinion Filed September 16, 1937.
On Petition for Rehearing February 24, 1938.
Rehearing Denied March 30, 1938.

*Montague Rosenberg,* for Appellants;

*Stockton, Ulmer & Murchison,* for Appellee.

BUFORD, J.—On August 21, 1935, appellee filed his bill of complaint against appellant in which he alleged in effect that on June 23, 1932, plaintiff instituted a suit at common law against defendant C. E. Foster in the Circuit Court of Duval County on claim existing in favor of plaintiff against defendant.

Said cause came on to trial on January 30, 1933. A verdict was rendered against the defendant in favor of plaintiff in the sum of $5,000 and on Febraury 3, 1933, a judgment was entered in favor of plaintiff against defendant in the sum of $5,000.00 and costs.

Writ of error was taken to the Supreme Court and on April 8, 1935, the mandate of the Supreme Court of Florida was filed in said Court setting aside and reversing the judgment.

On June 3, 1935, the cause came on for trial and a verdict was rendered in favor of plaintiff and against defendant in the sum of $20,670.00. That on the sixth day of June judgment was rendered on said verdict in the sum of $20,670.00 with costs.

Thereafter, on consideration of motion for new trial, the Court entered an order to the effect that if the plaintiff would enter a remittitur in the sum of $10,000.00, motion for new trial would be denied; that the remittitur was duly entered and thereupon new trial was denied. On August 3, 1935, an amended judgment was entered for $10,670.00 and costs.

That at the time of the institution of the suit Foster was the owner of and seized and possessed of certain real property in the City of Jacksonville, Duval County, Florida, described in the bill of complaint. That while said claim was still in existence and unpaid and while said suit was being prosecuted, and just a few days prior to the date upon which said suit was set for trial, January 30, 1933, defendant C. E. Foster executed and delivered to his wife, Lilliam M. Foster, certain deeds purporting to convey to the said Lilliam M. Foster, certain property described in the bill of complaint then owned by C. E. Foster. That the defendant, Lilliam F. Foster, had not transferred or in any manner alienated said described property thus attempted to be conveyed to her and that the same then stood in her name on the public records of said county.

That Lilliam M. Foster was at the time of the attempted conveyance the wife of the said defendant, C. E. Foster,

and upon information and belief avers the fact to be that the said deeds and each of them were given to the defendant, Lilliam M. Foster, without anything of value and without any valuable consideration moving to C. E. Foster and that said attempted conveyances were in fact gratuitous and voluntary; that each of said deeds was made, executed and contrived of fraud, covin, collusion and guile to the end of purpose and intent to delay, hinder, embarrass and defraud plaintiff of his just and lawful claim against the defendant, C. E. Foster.

That C. E. Foster did not have at the time of the aforesaid conveyances, or at any time since, other property sufficient to satisfy plaintiff's judgment and that the judgment is a lien upon the above described lands attempted to be fraudulently conveyed by Foster as alleged. That said deeds constitute a cloud on and obstruction to full and fair enforcement of the lien, which cloud and obstruction plaintiff is entitled to have removed.

That upon information and belief, plaintiff allegees the fact to me that notwithstanding the purported conveyances from defendant C. E. Foster to Lilliam M. Foster, his wife, C. E. Foster has retained dominion control over said property and is managing same and collecting rents therefrom. The described pieces of property have improvements thereon and that much of said property is being rented by the said defendant, C. E. Foster. That the income from said property is being dissipated by defendant and is not being applied upon indebtedness due plaintiff by virtue of said judgment; that the property when sold at forced sale would not bring sufficient to satisfy plaintiff's judgment. That Foster does not own sufficient property with which to satisfy the judgment. That the taxes are not being paid on the property; that the property is deterio-

rating and that the defendant is not preventing said deterioration by maintaining said property in good and substantial repair and by reason thereof plaintiff's rights are being continuously fraudulently prejudiced. Other allegations are immaterial here.

Defendant Foster admitted the judgment had been obtained against him as alleged, but says that the judgment was for alleged malpractice by the defendant. Other allegations in regard to the judgment are made which are immaterial now.

The answer then averred:

"Answering paragraph numbered two of said Bill of Complaint this Defendant denies that at the time of the institution of said suit that this defendant was the owner of said property; this defendant says that said property herein referred to was property owned by the wife of the defendant, Lilliam M. Foster, purchased with her own separate funds which she inherited from her father's estate; that the proceeds of his said wife's inheritance was delivered to this defendant to manage for his said wife, that all of said property referred to in said paragraph was actually bona fide owned and paid for by the wife of this defendant with her own funds and the increment and increase thereof of said properties; that said properties were purchased solely with the funds of the defendant's said wife, Lilliam M. Foster, and managed for her by this defendant, her husband, and title thereto was taken in the name of this defendant merely to facilitate the handling and management of said property for his said wife; that for some time prior to the dates mentioned in said paragraph his said wife had often requested him to convey her said property so that title might be taken in her name where it rightfully belonged in the event of any difficulty; that in

order to meet said request this defendant on or about the 21st of January, A. D. 1933, conveyed all of said property that was in his name and unincumbered to his said wife in order to vest record title in her, where it belonged. That this defendant, C. E. Foster, is the owner of other property of record in which this defendant has a substantial equity in the equitable real value thereof, of several thousands of dollars."

The answer then denied that the deeds were given to the defendant, Lilliam M. Foster, without anything of value and without any valuable consideration moving to C. E. Foster and denies that said attempted conveyances were in fact gratuitous or voluntary and denies that each of said attempted conveyances or any of them, were made and executed and/or contrived of fraud, covin, collusion and guile and to the end, purpose and intention to delay, hinder, embarrass and defend plaintiff, and alleges: "that said convenyances were made and taken in good faith and for a valuable consideration as more particularly appears from the allegations of the above and foregoing paragraph of this answer, specific reference whereof is hereby prayed and this defendant herein re-alleges and re-avers the allegations of said above paragraph as fully as if set out herein *in extenso.*"

The answer then denied that the judgment is a lien upon the lands described and denies that the deeds constituted clouds or obstruction to the full and fair enforcement of plaintiff's judgment lien and denies that said deeds constitute any cloud or obstruction which plaintiff is entitled to have removed. It then re-avers and re-alleges the averments contained in paragraphs 2 and 3 of the answer. The remaining allegations of the answer are not important here.

The answer of Lilliam M. Foster contains like allegations as those contained in the answer of C. E. Foster.

Under the issues presented order of reference was made containing the following:

"It is, therefor, ordered, adjudged and decreed that *Herbert Lamson,* Esquire, a practicing solicitor of this Court be, and he is appointed Special Master of this Court to take the testimony that may be produced and offered by the parties to this cause, and to report the same, together with his findings of law and fact, to this Court with all convenient speed.

"It is further ordered that the time for taking testimony shall expire at midnight on the 14th day of *February,* A. D. 1936."

Testimony was taken in which report the Master found:

"3. That at the time of the institution of the said common law suit against the said defendant, C. E. Foster, the said C. E. Foster held title in his own name exclusively to those certain pieces, parcels or tracts of land situate, lying and being in the County of Duval and State of Florida, particularly described in Exhibit 'A' attached to the bill of complaint in this cause, and particularly described in those certain deeds that have been offered in evidence in this cause as plaintiff's Exhibits 3 to 11, both inclusive, that said defendant, C. E. Foster, continued to hold title to said pieces of property in his name during the pendency of said common law suit, up to the dates of the several deeds that have been offered in evidence in this cause as plaintiff's Exhibits 2 to 11, both inclusive; and that while said common law suit was pending in the Circuit Court of Duval County, Florida, but before the entry of the judgment in said suit aforesaid, the said defendant, C. E. Foster, joined by his wife, Lilliam M. Foster, made, executed and deliv-

ered to the said Lillian M. Foster the several deeds described in Exhibit 'A' attached to the bill of compalint in this cause, as more fully appears from certified copies of said several deeds, which have been filed in evidence in this cause as plaintiff's Exhibits 2 to 11, both inclusive; and that at the time of the execution and delivery of the said several deeds, certified copies of which have been filed herein as plaintiff's Exhibits 2 to 11, both inclusive, the said defendant Lilliam M. Foster was the wife of the said defendant C. E. Foster.

"4. That the several pieces of property described in Exhibit 'A' attached to the bill of complaint in this cause, and more particularly described in plaintiff's Exhibits 2 to 11, inclusive, which have been filed in evidence herein, were acquired by the said defendant C. E. Foster with money part of which was entrusted to him by his wife, the said Lillian M. Foster, and part of which was money belonging to the said defendant C. E. Foster; that it is impossible from the evidence in this cause to tell exactly what portion of the funds used in purchasing said various pieces of property belonged to the defendant, Lillian M. Foster, and what portion of said funds belonged to the said defendant, C. E. Foster; that it appears from the evidence in this cause that on or about October 5, 1910, the defendant, Lillian M. Foster, turned over to her husband, the defendant, C. E. Foster, the sum of $1405.00 which sum of $1405.00 came to the said defendant Lillian M. Foster through inheritance from her father; that the defendant Lillian M. Foster, when she turned over to her husband, the defendant, C. E. Foster, the said sum of $1405.00 gave him the privilege of putting it in a home that they expected to buy and subsequently did buy, at 200 Jones Street, Valdosta, Georgia; that the defendant, C. E. Foster, put

with the said $1405.00 approximately $80.00 of his own money and purchased about the year 1910 the said property at 200 Jones Street, Valdosta, Georgia; that the defendant Lillian M. Foster turned over said sum of $1405.00 of her own money to the defendant C. E. Foster at the time aforesaid without taking any written evidence of indebtedness from the said C. E. Foster and without taking any written evidence of the receipt by the said C. E. Foster of the said sum of $1405.00, or of any other sum; and that from that time until the dates of the several conveyances shown by plaintiff's Exhibits 2 to 11, inclusive, in the year 1933, the defendant Lillian M. Foster allowed and permitted the defendant C. E. Foster under a mere verbal understanding between them, to hold and invest and reinvest, as he saw fit, the said sum of $1405.00 and the proceeds of the investment thereof, and that said Lillian M. Foster, during all of said period of time from October 5, 1910, down to the dates of the several conveyances shown by plaintiff's Exhibits 2 to 11, inclusive, filed in this cause, permitted the said defendant C. E. Foster, to hold title to all investments in which said sum was included in his own name, and permitted him during said period to manage and control exclusively the said sum of money, and all investments and reinvestments thereof, and all property in which said sum of money was invested, and to handle the same as if it were his own property.

"5. That it further appears from the evidence in this cause' that the property at 200 Jones Street, Valdosta, Georgia, so purchased by the defendant C. E. Foster and Lillian M. Foster his wife, was sold by them in April of 1915, for the sum of $3,000.00 cash; that the defendant Lillian M. Foster permitted the defendant C. E. Foster to retain in his name, possession and control the said sum of

$3,000.00 so obtained from the sale of said Valdosta property, and also permitted him to retain in his name, possession and control approximately $675.00 rents that had been paid by tenants of the said Valdosta property, and that he subsequently invested the said sum of $3,000.00, plus the said sum of $675.00 rents, or a total of $3,675.00, in real estate in Jacksonville, Duval County, Florida, taking title to such real estate in his own name exclusively; that the first investment he so made out of the proceeds of the sale and rents of the Valdosta property was the purchase by him, the said C. E. Foster, in 1915, of lots 22 and 23, in block 6, of New Riverside, Jacksonville, Florida, that the next piece of property purchased by the defendant, C. E. Foster, was the property at 413 East Adams Street, Jacksonville, Florida, which he purchased and title to which he took in his own name in December, 1916; that in acquiring this property at 413 East Adams Street, Jacksonville, Florida, the defendant, C. E. Foster, paid for the same partly out of the money so entrusted to him by his wife, Lillian M. Foster, partly with money belonging to him individually, and partly with money borrowed by him from the American Trust Company, Jacksonville, Florida, and partly by the rents from said property at 413 East Adams Street, Jacksonville, Florida; that subsequently, over the period from December, 1916, and before the year 1933, the said defendant C. E. Foster, acquired the other pieces of property mentioned and described in Exhibit 'A' attached to the bill of complaint in this cause and in the plaintiff's Exhibit 2 to 11, inclusive, filed herein, in addition to the specific pieces of property hereinabove already mentioned, and that the said defendant, C. E. Foster, in acquiring the said property, took title thereto in his own name exclusively, and in purchasing and acquiring said property he used part

of, the money so originally entrusted to him by his wife, Lillian M. Foster, part of his own money, and part of the rentals and earnings and income from certain of the pieces of property so acquired by him.

"6. That the defendant, C. E. Foster, in his testimony on pages 46 and 47 of the record in this cause, testified that he made the several conveyances of property set forth and shown by plaintiff's Exhibits 2 to 11, both inclusive, filed herein, to his wife, the defendant Lillian M. Foster, in the year 1933, because her money was invested in these properties, and she wanted her money protected against the judgment, copy of which has been filed in evidence as Plaintiff's Exhibit No. 1, and because it was her property and procured or purchased with money he had used for her, or acting as her agent, and she suggested that they do something for her protection, and they decided that was the best way to protect it, to convey the property purchased by her money.

"7. That the defendant C. E. Foster and the defendant Lillian M. Foster are husband and wife and were married to each other about the year 1906; and that during all of the transactions involved in this suit they, the said C. E. Foster and the said Lillian M. Foster were husband and wife.

"8. That since the said several conveyances set forth and shown by plaintiff's Exhibits 2 to 11, both inclusive, that have been filed in evidence in this cause, the said defendant, C. E. Foster, has continued to handle said pieces of property, and has continued to collect the rents therefrom and pay the taxes and upkeep thereon and has otherwise continued to handle the property in the same manner that he handled it while title to said pieces of property stood in his own name."

The Master then finds as a matter of fact and law, the following:

"9. That the defendant C. E. Foster did not have at the time the conveyances set forth and shown in plaintiff's Exhibit 2 to 11, both inclusive, nor has he since had, other property sufficient to satisfy plaintiff's judgment; that the conveyances set forth and shown by plaintiff's Exhibits 2 to 11, both inclusive, were when made, and have continued to be, and now are, fraudulent and null and void as against the claim of the plaintiff under the judgment obtained by plaintiff against the defendant C. E. Foster, as more particularly appears from certified copy of such judgment which has been filed in this cause as plaintiff's Exhibit No. 1; that said judgment is a lien on the property described in plaintiff's Exhibits 2 to 11, both inclusive, filed herein, and that said deeds namely, plaintiff's Exhibits 2 to 11, both inclusive, filed herein, constitute clouds on, and obstructions to, the full and fair enforcement of plaintiff's judgment thereon, which clouds and obstructions plaintiff is entitled to have removed."

It is shown by the records of this Court and admitted at the bar of this Court in this case that the judgment referred to in the pleadings resulted as the prosecution of a tort action by Thornton against Dr. Foster for damages resulting to Thornton by reason of the death of his wife which was alleged to have been caused by the negligence of the defendant Foster in the performance of a chiropractic adjustment. Therefore, in this case the question of credit being extended to Foster upon his apparent ownership of the property is not involved. If Foster had owned the property in his own right and had transferred and conveyed it to his wife without consideration for the purpose of hindering and delaying the tort claimant in the collec-

tion of a judgment which he might recover against Foster, then the conveyances would have been voidable as being in fraud of creditors. But that rule does not apply to cases where a tort feasor holds title to land in trust for another and makes a conveyance to the *cestui que* trust, the owner of the beneficial interest in the property, before the entry of judgment against him.

The findings of the Master were approved annd confirmed by the Chancellor.

Under the findings of fact by the Master and as approved by the Chancellor, the applicable law impressed a resulting trust on the conveyances of the described parcels of land in favor of Lillian M. Foster, and; Foster, in taking title to the lands, took title as Trustee for Lilliam M. Foster and when he conveyed the record title to her he did that which under the facts found by the Master, approved by the Chancellor and supported by the record, equity would have required him to do.

This is true, although a part of the funds which paid for the lands were the private funds of C. E. Foster.

The record shows that Mrs. Foster in November, 1910, delivered to Dr. Foster $1405.00 and authorized him at the time to invest it for her in a certain piece of property in Valdosta, Georgia, that Dr. Foster added to this sum $90.00 of his own money and bought that property, taking title thereto in his own name. That afterwards that property was sold; that Mrs. Foster allowed Dr. Foster to retain the proceeds of that sale, plus $675.00 rents which had been received for rental of the Valdosta property, and that he subsequently invested that money in real estate in Jacksonville, Duval County, Florida, taking title to such real estate in his own name exclusively.

It appears to be well settled that "in order to create a resulting trust in favor of a wife, it is not indispensable that the whole of the consideration should have been furnished by her and where any portion of the consideration belongs to the wife and title is taken in the husband's name alone there is no presumption of an advancement and a resulting trust arises in her favor by implication of law to the extent that consideration furnished by her is used, although he may have given his own notes for deferred payments." See 65 C. J. 414.

It is elementary that if a Trustee so commingles his funds with the funds of his *cestui que* trust that he can not definitely show what part of the fund was his and what part of the fund belonged to his *cestui que* trust, and the *cestui que* trust happens to be his wife, the funds con-contributed by him towards such investment will be presumed to be a gift to the wife and property purchased with such funds will be held in trust by him for the benefit of the wife.

Under the facts in this case the tort claimant can enforce no claim of higher dignity against the property than that which Dr. Foster himself could have enforced against the property.

In Haney v. Legg, 129 Ala. 619, 30 Sou. 34, it was held: "Where a husband purchases land with money which is a part of the wife's separate estate, and takes a deed in his own name, a trust results to the wife in such lands, which may be proven by parol; and it is not indispensable to the establishment of such trust that the whole of. the purchase money should have been paid wtih the funds of the wife; but, if any portion of the purchase money belonged to the wife, a resulting trust arises in her favor to the extent of the sum so used."

To the same effect is Johnson v. Foust, 138 Iowa 195, 139 N. W. 451; and in Kline v. Ragland, 47 Ark. 111, 14 S. W. 474.

In Hinshaw v. Russell, 180 Ill. 235, 117 N. E. 406, it was held:

"Where a wife pays part of the purchase price on land bought by her husband, a resulting trust arises from the act, and not from any agreement that the husband was a trustee for the wife."

"Although where a man pays for land and causes it to be conveyed to his wife or child it is presumed to be a gift, such is not true where the wife pays for land conveyed to her husband and where the proceeds of a wife's separate estate is used by a husband to purchase land, in the absence of other agreement, there is a resulting trust in the wife.".

See also Skehill v. Abbott, 184 Mass. 145, 68 N. E. 37.

In Murchison v. Bogleman, 165 N. C. 397, 81 S. E. 627, it was held:

"Where the purchase money for land was paid in part by a husband and in part by a wife, but the deed taken in the name of the husband, a resulting trust arose in favor of the wife, and she could thereafter demand a conveyance jointly to herself and husband and have the deed reformed, the effect of which would be to create an estate by the entireties."

In Central National Bank of Baltimore v. Connecticut Mutual Life Insurance Co., 104 U. S. 54, 26 L. Ed. 693, it was held: ·

"That, so long as trust property can be traced and followed into other property into which it has been converted, the latter remains subject to the trust, and that if a man mixes trust funds with his own, the whole will be treated

as the trust property, except so far as he may be able to distinguish what is his own, are established doctrines of equity and apply in every case of a trust relation, and to moneys deposited in a bank account, and the debt thereby created, as well as to every other description of property."

In Atkinson v. Ward, 47 Ark. 533, 2 S. W. 77, it was held:

"In such a case, if the agent mingle funds of his own with those of his principal, he must disclose the amount of his funds, or his principal will take the whole."

In Byrom v. Gunn, *et al.,* 102 Gla. 565, 31 S. E. 560, it was held:

"Where a husband mingled funds of his own, funds belonging to his wife, and funds belonging to a ward, and indiscriminately used the same in diverse real estate transactions, in the course of which he made numerous purchases, sales and reinvestments, sometimes taking title to property thus bought in his own name, and at other times in his name as trustee for the wife, and where, as an outcome of all these operations, it finally resulted that she obtained against him, in an equitable proceeding in which the ward was not represented, a judgment establishing in the wife, as against the husband, the title to a considerable amount of realty, consisting of various separate parcels, titles to which he had taken both of the ways above indicated, and into which as a whole the funds of the ward were traceable, though it was impossible to ascertain how much of any of the three funds went into any particular parcel, and where in the above mentioned transactions, which took place prior to the rendition of such judgment, the husband was acting as agent for the wife and he and she collusively procured that judgment to be rendered for the purpose of hindering, delaying or defrauding his cred-

itors, *held*: (a) that the act of the husband in intermingling the various funds referred to was, in law, the act of the wife, so far as concerned the rights of the wards. (b) That such judgment, though binding and conclusive between the husband and wife, was not so as to the ward. (c) That, under the facts recited, all of the property covered by such judgment, including not only that to which the husband took titles in his own name, but also that to which he took titles as trustee for his wife, could lawfully be subjected to the satisfaction of the ward's claim against him, in so far as the same rested upon the misappropriation of the ward's money in the manner above stated."

In Farmers' Bank of Whiteplains, *et al.,* v. Bailey, *et al.,* 222 Ky. 55, 297 S. W. 938, it was held:

"Where trust money is mingled with money of the trustee the *cestui que* trust is entitled to a priority of right against the entire fund over the claims of the other creditors."

For the reasons stated, the decree should be reversed with directions that the bill be dismissed.

It is so ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and CHAPMAN, J., concur in the opinion and judgment.

BROWN, J., dissents.

### EN BANC—ON PETITION FOR REHEARING

CHAPMAN, J.—On rehearing it was made to appear that L. Elmer Thornton, on June 23, 1932, filed a tort action in the Circuit Court of Duval County, Florida, against C. E. Foster, alleging that the wife of Thornton received certain fatal injuries and from the effects thereof later died, as therein described, on account of the negligence of C. E.

Foster. The suit was tried two or three times, ultimately resulting in a judgment in behalf of Thornton against C. E. Foster on August 3, 1935, for the sum of $10,670.00. After the tort action accrued and some two or three days before trial thereof in the Circuit Court of Duval County on January 30, 1933, the said C. E. Foster conveyed large holdings of real estate to his wife, Lillian M. Foster.

On August 21, 1935, I. Elmer Thornton filed a creditor's bill against C. E. Foster and wife, Lillian M. Foster, in the Circuit Court of Duval County, Florida. The bill of complaint alleged that ten pieces of real estate situated in the City of Jacksonville, Duval County, Florida, without consideration, were executed through fraud, covin, collusion and guile and conveyed for the purpose of hindering and delaying collection of the amount due on the judgment. A legal description of the ten pieces of real property is made a part of the bill of complaint, the prayer of which, among other things, is that the said conveyance, *supra,* transferring the ten pieces of real estate be declared null, void, and unlawful and that each of said parcels of land be subjected to the payment of the judgment of the plaintiff and that same be sold on an execution predicated on the aforesaid judgment.

On April 30, 1935, separate answers were filed on the part of C. E. Foster and wife, Lillian M. Foster, to the bill of complaint in which each of the material allegations thereof were denied, and averred, that the deed dated January 30, 1933, from C. E. Foster to his wife, Lillian M. Foster, was an honest, praiseworthy, and laudable transaction and was predicated on a lawful consideration, and that his said wife, Lillian M. Foster, had been for a number of years the equitable owner of the property prior to the date of said conveyance.

Each of the answers contained a motion on the part of defendants to dismiss the bill of complaint upon a number of grounds unnecessary to recite. Interrogatories were propounded and answers thereto filed by the defendants, and when the cause was at issue an order was entered referring it to Herbert Lamson, a member of the bar of Duval County, with instructions in the order of reference to take all testimony and report the same with findings as to law and facts. All testimony was taken by the Master, and on April 15, 1936, he made his findings as to questions of law and facts and reported the same to the Court. The Master found, among other things: (1) the equities of the cause were with the plaintiff; (2) that C. E. Foster was the owner of the lands described in plaintiff Exhibits from 2 to 11, inclusive, at the time the common law suit was filed; (3) that on October 5, 1910, Lilliam M. Foster "turned over to her husband" $1405.00, and a home was bought, situated in Valdosta, Georgia, and in April, 1915, the same sold for $3,000.00, and with the additional sum of $675.00 in the form of rents likewise turned over to her husband, making a total of $3675.00, and by her husband to be invested in Jacksonville real estate, which was done, beginning with the year 1915. The money of the wife, *supra*, with moneys of her husband, paid for the realty conveyed to the wife on January 30, 1933.

On final hearing the Court ratified and confirmed the report of the Special Master and decreed the conveyance from C. E. Foster to his wife, Lillian M. Foster, on January 30, 1933, null, void, fraudulent, and of no effect as to the plaintiff and set the same aside and decreed the real estate therein described to be the property of C. E. Foster and subject to the writ of execution based on the judgment *supra*. From the final decree on behalf of plaintiff an ap-

peal was taken and the cause is here for review on a number of assignments.

The common law action and this chancery suit have been before this court several times. This bill of complaint was filed under Section 5771 C. G. L. This Section was construed in the suit of Foster, *et ux.,* v. Thornton, 125 Fla. 829, text 835, 170 So. 598, when Mr. Justice Buford, speaking for the Court, said:

"As we construe Section 3864 R. G. S., 5771 C. G. L., it must be held to apply to any sale, conveyance or transfer of any lands, tenements or hereditaments which shall have at any time after the passage of the statute be had, made or executed, contrived, or devised of fraud, covin, collusion, or guile, to the end, purpose or intent to delay, hinder or defraud creditors or others of their just and lawful actions, suits, debts, accounts, damages, demands, penalties or forfeitures and that within the terms of that statute is a conveyance made for the purpose of hindering or defrauding one who claims damages for tort or otherwise."

Counsel for appellants contends that the only question of law involved is: Where a tort feasor holds title to lands in trust for another and makes a conveyance to the cestui, the owner of the beneficial interest in the property, before the entry of judgment against him, may such conveyance be subjected to claims against the trustee? In support of the question, as propounded by counsel for appellants, is cited Glidden, Admr., v. Gutelius, 96 Fla. 834, 119 So. 140; Myers, Receiver, v. Matusek, 98 Fla. 1126, 125 So. 360; First Trust & Savings Bk. v. Therrell, as Liquidator, 103 Fla. 1136, 138 So. 733, with many citations of authorities from other jurisdictions.

We have examined each of these authorities and are in full accord therewith. The question propounded by coun-

sel for appellants assumes that the lands were bought with trust funds of Mrs. Lillian M. Foster when in 1910 Mrs. Foster placed $1405.00 with her husband and a home was purchased at Valdosta, Georgia. The evidence fails to disclose the amount paid for the home or whose money other than Mrs. Foster's was included therein. It is doubtful if we can assume, as has been done in the question propounded by counsel, that no money other than the wife's went into the property. It is shown that the Valdosta home was sold for $3,000.00 during the year 1915 and this money was invested in Jacksonville real estate. There should be some evidence in the record to show that this $3,000.00 was the property of Mrs. Foster. The appellants assume that the $3,000.00 was the property of Mrs. Foster about the time of the trial of the common law tort action. The burden of proof was on Mrs. Foster to prove that the consideration for the deed was *bona fide* and proportionate to the value of the property conveyed as expressed by this Court in Weaver-Loughridge Lbr. Co. v. Kirkland, 99 Fla. 427, text 431, 126 So. 773, when it was said:

"Where a wife permits her husband to hold the record title to her realty or permits him to use her money as his own to invest it in his own name and thereby obtain credit on the faith of his being the owner of property, she is estopped in equity to assert her title thereto as against one extending credit to the husband in reliance on such ownership. Russ v. Blackshear, 88 Fla. 573, 102 So. R. 749; Warner v. Watson, 35 Fla. 402, 17 So. R. 654. In a suit to set aside a conveyance made by a husband to his wife as fraudulent, brought by a creditor whose claim existed and was being reduced to judgment at the date of such conveyance, the burden of proving that the consideration for

the conveyance was *bona fide* and proportionate to the value of the land conveyed is upon the wife and clearer and fuller proof is required than if the transaction had been between strangers. Southern Lbr. & Sup. Co. v. Verdier, 51 Fla. 570, 40 So. 676. Hummell v. Harrington, 92 Fla. 87, 109 So. Rep. 320."

In the case of Southern Lumber & Supply Co. v. Verdier, 51 Fla. 570, text 576, 40 So. 676, this Court had before it the burden and character of proof resting upon a wife when a conveyance to a wife by a husband where the husband was insolvent. There was no property appearing in the husband's name after January 30, 1933. The Court said:

"Purchasers of real or personal property, made during coverture, by the wife of an insolvent debtor are justly regarded with suspicion and she cannot prevail in contests between his creditors and herself, involving their rights to subject property so required to the payment of his debts, unless the presumption that it was not paid for out of her separate estate be overcome by affirmative proof, and she must be held to full, clear and strict proof. Kahn v. Weinlander, 39 Fla. 210, 22 South. Rep. 653. It nowhere appears from the answer whether the money which T. C. Verdier received from his wife for the real estate conveyed to her was a consideration proportionate to the value of the land conveyed. The value of the latter is not stated. In a suit to set aside a conveyance made by a husband to his wife as fraudulent, brought by his creditors whose claims existed at the date of such conveyance, the burden of proving that the consideration of the conveyance was *bona fide* and proportionate to the value of the land conveyed is upon the wife, and clearer and fuller proof is required than if the transaction had been between strangers. Claffin v. Am-

brose, 37 Fla. 78, 19 South. Rep. 628; McTeers v. Perkins, 106 Ala. 411, 17 South. Rep. 547."

See Baker & Homes Co. v. Gibson, 102 Fla. 891, 136 So. 544; Kahn v. Weinlander, 39 Fla. 210, 22 So. 653.

The rule for determining the weight and sufficiency of the evidence in establishing a resulting trust has been settled in this Court for approximately fifty years. In the case of Loftin v. Sterrett, 23 Fla. 565, 2 So. 837, it was held that a resulting trust in real estate may be proved by parol testimony, but such proof must be full and clear. Likewise in the case of Geter v. Simmons, 57 Fla. 423, 49 So. 131, it was said:

"Evidence to establish a resulting trust must be so clear, strong and unequivocal as to remove from the mind of the Chancellor every reasonable doubt as to the existence of a trust."

Also in the case of Brown, et al., v. Brown, 106 Fla. 423, text p. 426, 143 So. 737, this Court said:

"When a resulting trust is sought to be established by parol evidence the burden rests upon the person asserting the existence of the trust to remove every reasonable doubt as to its existence by clear, strong and unequivocal evidence. Fox v. Kimball, 92 Fla. 401, 109 Sou. Rep. 465; McGill v. Chappelle, 71 Fla. 478, 71 South. Rep. 836; Semple v. Semple, 90 Fla. 7, 105 South. Rep. 134; Johnson v. Sherehouse, 61 Fla. 647, 54 South. Rep. 892."

Appellee at the hearing before the Master, offered in evidence a certified copy of the judgment against C. E. Foster and certified copies of the alleged fraudulent conveyances and rested his case in chief. The burden of proof was then on Mrs. Foster to show that she paid for the property described in the deed with her separate money or property, and that she paid an adequate ·consideration therefor,

and this burden must be met by full, clear and strict proof. This rule is established by the above authorities. The appellants rest their case upon the testimony of Dr. C. E. Foster, Mrs. Lillian M. Foster and Mrs. Speight, with exhibits. The record shows that Mrs. Lillian M. Foster, in October, 1910, received from her father's estate the sum of $1405.00 which she "turned over to her husband," and the husband brought property at Valdosta, Georgia, and sold it at a profit. The ownership of that $1600.00 profit has not been established by the appellants, as required by the above authorities. We cannot, as a matter of law, assume that it was the property of Mrs. Foster but in the absence of proof must hold that it was the property of her husband, Dr. C. E. Foster. During the year 1915, with the $3,000.00, *supra,* Dr. Foster and wife moved to Jacksonville where he bought Jacksonville real estate with the $3,000.00 and other moneys coming into his possession, and always taking the title thereto in his own name. There is nothing in the record to show that any of Mrs. Foster's money went into the Jacksonville real estate other than the $1405.00 coming from her father's estate, but strong inferences are that Dr. Foster, with his own funds, paid for the real estate described in the bill of complaint. His statements as given in his direct testimony as to these different properties were practically destroyed on cross examination. He denied the ownership of stock in a certain corporation doing business in the City of Jacksonville; an officer thereof was called, with the records, disclosing contradictory testimony, which he later admitted when confronted with the record, but previously denied. The record here fails to show that Mrs. Lillian M. Foster met the burden of proof as required by the decisions of this Court, except the payment in October, 1910, of the sum of $1405.00 to her husband. The evidence

on this point is full, clear and strict and otherwise meets the law's requirements. It would be inequitable to permit and allow her to hold several thousand dollars worth of valuable real estate when the evidence shows that she had only $1405.00 going into the property and later obtained title thereto at a time when her husband was a defendant in a common law action and the possibility of a judgment being obtained against him, and under these conditions and circumstances, when details of transaction of some twenty or more years ago were given in evidence, with some book records thereof. The record shows that Dr. Foster's money paid for the property conveyed to his wife, with the exception of $1405.00. When this sum, with interest, is returned to Mrs. Lillian M. Foster, the property described in the bill of complaint should be subject to the writ of execution. See Helland v. Evans, 113 Fla. 839, 152 So. 623.

The record shows that Dr. Foster with $1405.00 of his wife's money, in 1910 began to buy or otherwise invest in real estate. He kept the property intact and bought and sold as his judgment dictated, always taking title in his own name. She at no time required an accounting on his part— he held out to the world that he owned the property some few months prior to suit when he was negotiating a loan for $5,000.00 and agreed to pledge some of the property as security, when no complaint was made by his wife on this occasion.

Section 4 of the Declaration of Rights of the Constitution of Florida provides:

"All courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay."

The Courts of this State are required to see that right and justice shall prevail. Mrs. Lillian M. Foster placed with her husband the $1405.00 in the year 1910, and "if right and justice is administered" in this case, the money, with simple interest at six per cent since 1910 to the present date, should be returned to her. The property to which she now holds title should be charged with an equitable lien for said amount and the same is prior in dignity in order of payment to the judgment obtained in this case against her husband.

This Court had before it the question of an equitable lien in the case of Jones, Trustee, v. Carpenter, 90 Fla. 407, text 412-414, 106 So. 127, when it said:

"In Society of Shakers v. Watson, 68 Fed. 730, it was said that the doctrine of equitable liens is one of great importance and of wide application in administering the rights and remedies peculiar to equity jurisprudence. There is perhaps no doctrine which more strikingly shows the difference between the legal and the equitable conceptions of the juridical results which flow from the dealings of men with each other, from their express or implied undertakings. An equitable lien is not an estate or property in the thing itself nor a right to recover the thing—that is, a right which may be the basis of a possessory action; it is neither a *jus ad rem* nor a *jus in rem*. It is simply a right of a special nature *over* the thing, which constitutes a charge or encumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree, and its proceeds in the one case, or its rents and profits in the other, applied upon the demand of the creditors in whose favor the lien exists. It is the very essence of this condition that while the lien continues the possession of the thing remains

with the debtor or the person who holds the proprietary interest subject to the encumbrance. Pomeroy's Equity Jurisprudence, Vol 3, (4th Ed.) page 2958. * * *

"The equitable lien differs essentially from a common law lien, the latter being the mere right to retain possession of some chattel until a debt or demand due the person thus retaining it is satisfied. Possession being such a necessary element that if it is voluntarily surrendered by the creditor the lien is at once extinguished while in the former or equitable lien possession remains with the debtor or person who holds the proprietary interest. Jones on Liens (3rd ed.) Vol. 1, 26; Pomeroy's Equity Jurisprudence (4th Ed.) Vol. 3 2958; 17 R. C. L. 605.

"From the foregoing it is seen that equitable liens arise from two sources, viz.: (1) a written contract which shows an intention to charge some particular property with a debt or obligation; (2) is declared by a court of equity as applied to the relations of the parties and the circumstances of their dealings in the particular case. Jones on Liens, *supra;* 17 R. C. L. 605 *supra;* 25 Cyc. 667 * * * ".

Our conclusion is that Mrs. Lillian M. Foster has an equitable lien in and to the property described in the bill of complaint for the sum of $1405.00, with interest from October 5, 1910, at the rate of six per cent per annum until paid, and the total amount due for principal and interest to January 1st, 1938, is the sum of $3702.17, and that said equitable lien is prior in dignity to the judgment lien of L. Elmer Thornton. The decree appealed from is affirmed as modified by this opinion. The original opinion held herein is modified, altered and overruled in so far as it conflicts with this said opinion, otherwise to remain the law of this case.

It is so ordered.

WHITFIELD, TERRELL and BROWN, J. J., concur.

ELLIS, C. J., and BUFORD, J., dissent.