195 So.2d 577 (1967)
Carmen Camps De QUINTANA, Individually, Appellant,
v.
Maria Del Pilar Bertha Lopez De Quintana de ORDONO, a/k/a Bertha Ordono, M.L. De Quintana, Jr., and Maria Teresa L. De Quintana, Appellees.
No. 66-230.
District Court of Appeal of Florida. Third District.
February 14, 1967.
Rehearing Denied March 14, 1967.
*578 George H. Salley and Paul D. Barns, Jr., Miami, for appellant.
Redfearn & Simon and Robert P. Kelley, Wall, Roth & Sheradsky, Miami, for appellees.
Before HENDRY, C.J., and PEARSON and CARROLL, JJ.
HENDRY, Chief Judge.
Plaintiffs, children of the deceased by a prior marriage, sought a declaratory decree to determine the rights of the defendant widow, and the estate of the deceased in certain property. The chancellor granted the plaintiffs' motion for summary decree and found that the property was solely owned by the deceased at the time of his death. He therefore decreed that the estate of the deceased is now the owner of the property and the widow, Carmen Camps de Quintana, has no right, title or interest in the property except such interest as may be set off to her by the County Judge's Court of Dade County, Florida under the probate laws of Florida.
There is no substantial conflict as to the material facts. The defendant and the deceased were married on September 10, 1936, in Oriente Province in Cuba. Both parties were Cuban Nationals. Under the then existing laws of Cuba the marriage was under the regime of "Sociedad de Gananciales", a form of community property marriage. The deceased had no assets at the time of his marriage. The husband and wife were domiciled in Cuba until 1960. A Florida domicile was established when the couple moved here in 1960. They remained in Florida up to the time of the husband's death on September 1, 1963. The husband died intestate.
On or about June 12, 1952, the husband purchased for $50,000.00, five thousand shares of Okeelanta Sugar Refinery, Inc. stock, a Florida corporation. An additional five thousand shares was acquired for $50,000.00 on October 30, 1958. On December 29, 1961, as a result of a ten-for-one stock split, these shares were exchanged for one hundred thousand shares.
On October 1, 1963, the husband received the promissory note of Stewart Macfarlane, then President of Okeelanta Sugar Refinery, Inc., payable to the husband in the amount of $810,000.00 and a contract for additional monies from Macfarlane for the *579 alleged sale of the one hundred thousand shares.
The interest of the estate of the deceased and the widow in the promissory note and contract are the subject of this action. An additional issue raised below by the plaintiffs was that if the property is, in fact, owned in some part by the widow, is she estopped from obtaining her interest by a reference to the assets as "estate assets" in the inventory submitted by her as co-administrator of her husband's estate or by failing to file a claim within the six months provided for in § 733.16 Fla. Stat., F.S.A., the non-claim statute.
Paragraph 1401, Civil Code of Cuba provides:
"1401. To the Society of gains belong:
"1. Property acquired by onerous title,[1] during the marriage, at the expense of community property, whether the acquisition is made for the community or for only one of the consorts. [Footnote supplied.]
"2. That obtained by the industry, salaries or work of the consorts or of either of them.
"3. The fruits, rents, interests collected or accrued during the marriage, and which came from the community property, or from that which belongs to either one of the consorts."
Paragraph 1407, Civil Code of Cuba provides:
"1407. All the property of the marriage shall be considered as community property until it is proven that it belongs exclusively to the husband or to the wife."
Initially, it must be determined what interest, if any, the widow had in the one hundred thousand shares of Okeelanta Sugar Refinery, Inc. stock.
The plaintiffs submitted an affidavit of a friend of the family, N.H. Tomayo, in opposition to defendant's motion for summary decree. It is alleged therein that the husband came to Florida in 1951 to act as plant manager and supervise the operation of the Okeelanta Sugar Refinery, Inc. Further, that from 1951 until the time of his death in 1963, almost all of the husband's income and assets were acquired in Florida. It is also alleged that as an inducement to continue working in Florida, the husband was given an opportunity to buy stock in Okeelanta Sugar Refinery, Inc.; and, that while he was employed in Florida, the husband returned to Cuba for weekends and other occasional visits.
The defendant submitted an affidavit which indicated that the source of the purchase price of the stock was from profits and salaries of enterprises within Cuba, and a loan on an estate in Cuba.
Whether the source of the purchase price of the stock was from enterprises within Cuba or Florida is not material. What is material and not in conflict is that the husband and wife were domiciled in Cuba at the time of the acquisition of the stock.
As plaintiffs contend, the law of the situs has primary control over property within its borders. However, by the almost unanimous authority in America, the "Interests of one spouse in movables acquired by the other during the marriage are determined by the law of the domicile of the parties when the movables are acquired."[2] This rule is applicable where the money used to purchase the movables is earned from services performed in a place other than the place of the domicile.[3] We accept *580 this rule, founded on convenience, as the only logical method of determining marital interest in movables.
Section 1407 of the Civil Code of Cuba, the place of the domicile at the time of the acquisition of the stock, provides that all property of the marriage shall be considered as community property until proven to be separate property of the husband or wife. The plaintiffs presented no evidence which would tend to prove that the stock was the separate property of the husband or purchased from proceeds of his separate property. The uncontradicted evidence does show that the husband brought no assets to the marriage.
Therefore, under the laws of Cuba the stock did not vest in the husband but in the "Sociedad de Gananciales".[4] Thus the wife had a vested interest in the stock equal to that of her husband.[5]
The interest which vested in the wife was not affected by the subsequent change of domicile from Cuba to Florida in 1960.[6]
While domiciled in Florida, the husband allegedly sold the stock and received in exchange therefor the promissory note and contract with which we are concerned. The wife denied that the stock was in fact sold, alleging that it was merely transferred to Stewart Macfarlane, as trustee. Whether or not the stock was sold is not material to the determination of the ownership of the assets in question.
Since the promissory note and contract were acquired while the husband and wife were domiciled in Florida, this transaction is controlled by our law.
Under Florida law, if a portion of the consideration belongs to the wife and title is taken in the husband's name alone, a resulting trust arises in her favor by implication of law to the extent that consideration furnished by her is used.[7] A resulting trust is generally found to exist in transactions affecting community property in noncommunity property states where a husband buys property in his own name.[8] Therefore, while the husband held legal title to the note and contract, he held a one-half interest in trust for his wife.
It is well settled that the Florida non-claim statute, § 733.16, supra, does not apply so as to require the cestui to file a claim against the estate of the trustee.
As the estate holds the legal title to the note and contract, it is proper that the administrators of the estate collect the monies, principle and interest due on the note. Such procedure does not estop the wife from obtaining her interest. The administrators of the husband's estate are trustees as to the wife's equitable interest.
The chancellor was correct in his determination that there exists no material issues of fact. However, the applicable law was misapplied in granting the plaintiffs' motion for summary decree and in denying defendant's motion.
*581 Therefore, the decree appealed is reversed and the cause remanded with directions to enter a decree in accordance with this opinion.
Reversed and remanded.
NOTES
[1] Blood v. Hunt, 97 Fla. 551, 121 So. 886 (1929), "`By onerous cause or title,' viz. by purchase or for value paid."
[2] Restatement, Conflict of Law § 290 (1934); Leflar, Conflict of Laws § 176 at 336 (1959); Stumberg, Conflict of Laws 313 (2d ed. 1951); 2 American Law of Property § 7.18 at 163 (Casner ed. 1952).
[3] Shilkret v. Helvering, 78 U.S.App.D.C. 178, 138 F.2d 925, 929 (1943).
[4] See Sanchez v. Bowers, 70 F.2d 715 (2d Cir.1934).
[5] 2 Tiffany, Real Property § 438 (3d ed. 1939); 4 Powell, Real Property pt. 3 § 627 at 688 (1954).
[6] In re Thornton's Estate, 1 Cal.2d 1, 33 P.2d 1, 92 A.L.R. 1343 (1934); Depas v. Mayo, 11 Mo. 314, 49 Am.Dec. 88 (1848); Restatement, supra note 2 § 292; Leflar, supra note 2 § 177 footnote 56; Stumberg, supra note 2 at 314; 2 American Law of Property § 7.18 at 165 (Casner ed. 1952).
[7] Foster v. Thornton, 131 Fla. 277, 179 So. 882, 883, 887 (1938).
[8] Rozan v. Rozan, N.D. 1964, 129 N.W.2d 694, 701; Stone v. Sample, 216 Miss. 287, 62 So.2d 307, 63 So.2d 555 (1953); Depas v. Mayo, supra note 6; Stumberg, supra note 2 at 315; Bogert, Trusts & Trustees § 26 at 221, § 454 at 516 (2d ed. 1964).