**BULL et al. v. SMITH, Collector of Internal Revenue.**

No. 206.

Circuit Court of Appeals, Second Circuit.

May 5, 1941.

Wiggin & Dana, of New Haven, Conn. (Frederick H. Wiggin and Grant N. Nickerson, both of New Haven, Conn., of counsel), for plaintiffs-appellants.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewell Key, J. Louis Monarch, and William L. Cary, Sp. Assts. to the Atty. Gen., and Robert P. Butler, U. S. Atty., and Valentine J. Sacco, Asst. U. S. Atty., both of Hartford, Conn., for defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiffs are the executors of the will of Alice E. Kingsbury, who died on April 4, 1937. They filed a federal estate tax return on July 2, 1938, reporting a tax liability for the estate in the amount of $134,450.21, which was paid on July 2, 1938. The property of the estate was valued as of April 4, 1938, under the election of the taxpayers to have the property valued as

of one year after the death of the decedent pursuant to the option granted by Section 202 of the Revenue Act of 1935, 26 U.S.C.A. Int.Rev.Acts, page 805.

At the time of the decedent's death she owned the following securities which the executors reported in their return:

| Name of Company | Shares Outstanding | Shares Owned by This Estate | Per Share Market Quotations | Per Share Value of Block According to Plaintiffs' Expert |
|---|---|---|---|---|
| Bridgeport Brass Co. | 926,990 | 15,180 | $ 6⅝ | $ 5⅝ to $6 |
| Hartford Steam Boiler Insurance Co. | 300,000 | 600 | 45¼ | 40 |
| Illuminating Shares Co. | 1,158,966 | 800 | 46½ | 42¾ |
| Scovill Mfg. Co. | 1,046,838 | 15,030 | 19½ | 16½ to 17 |
| Torrington Co. | 1,627,050 | 2,400 | 18¾ | 17¼ |

The tax as assessed and paid was based on the acceptance by the Commissioner of Internal Revenue of the valuations at market quotations set forth above.

The plaintiffs called an expert who was found by the court to be competent in his field. According to his estimates the value of the stocks was as stated in the last column on the right. If the valuation should be reduced in accordance with the figures in that column the estate tax would be reduced by $14,929.04 and the plaintiffs would be entitled to a refund of that amount as an over-assessment.

A claim for a refund of $14,929.04 was filed by the taxpayers on February 15, 1939, and this action was thereafter brought against the collector to recover that amount. The trial judge held that the plaintiffs had not established that the assessed valuations, which followed the market quotations, were wrong and accordingly granted judgment for the defendant. We think that he reached the right result and that the judgment should be affirmed.

The plaintiffs by the testimony of their expert sought to show that the securities were worth less than the amounts assessed because the holdings were so large that sales of the entire amount on April 4, 1938, would depress the market to the extent indicated by the expert. The testimony as to the effect of thus marketing the securities may have involved permissible estimates as to the amounts which would have been realized through such a disposition and yet it did not necessarily afford a fair criterion of value. In a reasonably ready market shares of stock might be worth the price quoted on a particular date even though no purchaser would have been available for a large block if in the near future all the shares could have been "peddled out" according to the practice of prudent executors at the price realizable on the critical date for a small number of shares. The stock may well have been worth the market price realizable for the smaller number of shares because the owner could realize that amount by an efficient liquidation with a loss of only a negligible sum for a few days' interest.

The stock of Bridgeport Brass Co. was assessed at 6⅝ per share, the mesne sales price upon sales aggregating 14,200 shares in the week ending April 1, 1938, was 6⅛. During the following week the mesne price was 6¾. The stock held by the estate represented only about 1½ per cent of the shares outstanding and was but little more than the total shares sold during the week prior to April 1.

During the week ending April 1, the stock of the Scovill Mfg. Co., which was assessed at 19½, sold at 19, and during the next week at a mesne price of 20¼. There were records of over-the-counter sales of the stock in small lots at 20¼ on April 4. All sales were above 20 until after May 20.

The stock of the Hartford Steam Boiler Insurance Co. was assessed at 45¼. There was a bid price at that figure quoted in the Wall Street Journal for April 4. There were sales of the stock in small lots on April 4 at 45, on April 6 at 47, on April 7 at 45½, on April 8 at 45, and on May 17, 24 and 25 at 52.

The Illuminating Shares were assessed at 46½. There were sales in small lots on April 4 at 47, April 5 at 48½, April 6 at 48,

47½ and 49; April 8 at 48 and April 11 at 48¾, 48 and 50.

The stock of the Torrington Co. was assessed at 18¾. It sold on April 4 at 18⅝, April 5 at 18¾, April 7 at 20 and 20½ and on April 9 at 24 and 24½.

The transactions in all of the foregoing shares were carefully discussed in the decision of the District Judge. He ought to be allowed a reasonable latitude as to how far the estimates of the expert should guide him in reaching his conclusions. The record of transactions in the various securities indicated that a reasonably efficient liquidation of the stocks on April 4 and within a short time thereafter would have sustained the values assessed by the Commissioner and adopted by the court. The trial court held as follows: "The fair market value as of a given date of a large block of stock, within the meaning of the Internal Revenue laws, is the highest value at which it could be sold if the owner on the critical date were to instruct a broker, reasonably skilled in dealing with such stock, to liquidate the block on the best terms available within the period of time reasonably required for liquidation in view of the situation as it then existed and should develop during the progress of liquidation."

We need not say that under the circumstances developed at the trial the proper measure of value was the market price regardless of the character of the market and the number of shares to be sold. If it was, the findings were justified, if, on the other hand, the so-called "blockage" factor is to be considered the same result follows for the evidence indicates that a skillful broker could within a reasonable period have realized for the stock the amount assessed by the Commissioner. This was the proper criterion, if it be assumed that the market quotations for sales of relatively small lots were not a definite measure of value. The trial court was not obliged to follow blindly the discounts of the assessment suggested by the taxpayer's expert. Indeed, it seems to us that these discounts did not sufficiently take into consideration values inherent in the probability that the shares could be liquidated for more than the expert's estimates if a short time should be taken to obtain better prices. Such a mode of liquidation is the only one that a prudent executor holding a large block of stock would adopt.

Judgment affirmed.