## CARLTON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 13373.

United States Court of Appeals
Fifth Circuit.

June 25, 1951.

Doyle E. Carlton, Michel G. Emmanuel, Tampa, Fla., for petitioner.

Louise Foster, Ellis N. Slack, Robert N. Anderson, Morton K. Rothschild, Special Assts. to Atty. Gen., Theron L. Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, Charles E. Lowery, Special Attorney, Bureau of Internal Revenue, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and SIBLEY and STRUM, Circuit Judge.

JOSEPH C. HUTCHESON, Chief Judge.

Appealing from a decision of the Tax Court finding and declaring a deficiency in gift taxes for 1944, in respect of gifts in trust to petitioner's wife for their children, petitioner attacks the decision as erroneous in two particulars.

One of these is the rejection of petitioner's claim that twenty percent of the property conveyed in trust belonged to his wife and should not have been taken into account in valuing for gift tax purposes the property conveyed.

The other is that the Tax Court's finding as to the value of the Jenkins, the Carlton Home, and the Whiddon groves was clearly erroneous.[1]

Except in respect of the contrary opinions as to the values of the three groves above referred to, the evidence presents substantially no disputed question of fact.[2]

1. 

| Property | Value Returned by Taxpayer | Value Determined by Commissioner | Value fixed by Tax Court |
|---|---|---|---|
| Jenkins Grove | $32,000.00 | $79,300.00 | $72,000.00 |
| Home Grove | 5,000.00 | 15,000.00 | 11,000.00 |
| Whiddon Grove (½ int.) | 9,000.00 | 19,200.00 | 19,000.00 |

2. As found by the Tax Court and not complained of by the petitioner, these undisputed facts in substance are:

The taxpayer, C. J. Carlton, married Mattie S. Carlton on March 8, 1905. They have five children. The gift tax returns in question were filed with the Collector for the District of Florida.

On or about Jan. 3, 1944, the taxpayer created five separate identical trusts for the benefit of his children, and transferred, by gift, to his wife as trustee equal interests in certain real and personal property. The five children were Ara C. Finley, Dale Carlton, Odell Carlton, Frieda C. Edwards, and Golda Carlton. The taxpayer's wife joined in the conveyance of the properties.

The Jenkins property had been purchased in 1913 for $11,000. It comprised approximately 330 acres of which 80 acres were planted in groves containing 20 year old Valencia orange and 30 year old pineapple-orange trees, together with grapefruit and tangerine trees, and seedlings. Of the remaining acres, approximately 60 were cleared and 190 were not cleared. Located on the property was a four room, one-story frame house, approximately 50 years old, a barn with a metal roof, and an irrigation system which was abandoned after the gifts in question.

The Home property comprises 12 acres improved by a 44 year old one-story frame house, a barn, two shelters and a well for irrigation. It was located in the town of Wauchula, which has unusually high taxes. Grapefruit, Valencias and pineapple-oranges were grown on the property.

The Whiddon Grove property, about five miles from Wauchula, comprised 80 acres, of which 50 acres were groves containing 20 acres of 40 year old seedlings, 20 acres of 20 year old Buds, 8 acres of 8 year old Buds, and 2 acres of 2 year old Buds. The remaining 30 acres of this land were timbered property.

The value of all grove properties fluctuated from 1939 to 1949, with the price of fruit. Prices which had been very low began to rise slowly after the entrance of the United States into the war and the government started buying citrus fruit in the fall season of 1942. In 1943 and early 1944, prices were still low. They commenced to rise sharply in late 1944, until with ups and downs, they reached their climax in 1946, and then broke badly in the fall of that year when the government ceased buying citrus fruit.

At the time of her marriage, the taxpayer's wife received a gift of cattle from her father which were sold for $1800 in or around 1912. In 1920, she was given property which subsequently sold for $1350. From 1922 to 1936, she received a total of $4,263 from her father's estate. These monies were deposited in a joint banking account in the name of the taxpayer and his wife, upon which she still draws. She has no record of her withdrawals. She has always been engaged at home in the duties of a housewife, including rearing the five children. She has not engaged in any other employment. The taxpayer owned $8,700 worth of property at marriage. From 1925 to 1943, he received $10,500 from his father's estate. The Jenkins,

Petitioner's claim of error in respect of his first point has three main bases: (1) under the law of Florida,[3] petitioner held title to the property involved in trust for his wife proportionate to the percentage of purchase money paid by her for the property; (2) petitioner is, under the law of Florida,[4] trustee for his wife as to properties to the extent that her money enters into their purchase; and (3) under the law of Florida,[5] the wife has a "special equity" in property held in the name of the husband where she has contributed industry and labor jointly with her husband toward the acquisition of the estate.

The Tax Court, treating petitioner's claim as one that the value of the marital rights of a wife in Florida could constitute adequate and full consideration in money or moneysworth for gift tax purposes, rejected it on the authority of Merrill v. Fahs, 324 U.S. 308, 65 S.Ct. 655, 89 L.Ed. 963. The claim that the wife had an equity arising out of her contribution and services to the marital community was rejected by the Tax Court on the ground that the cases petitioner relies on must be limited to their fact situations.

Finally, treating the claim of petitioner as one that the consideration which acquired the properties, transferred by gift, was in part the separate property of the wife, the Tax Court points out that there is no sufficient tracing, no proof adequate to support a claim by the wife upon any of the particular properties in question here.

■ Without undertaking to adequately appraise the scope, the effect, or the limits of the Florida decisions cited and relied on by petitioner, or their general application to a situation of this kind, it is sufficient to say that we agree with the Tax Court that the proof in this case is wholly insufficient to support the claim that as to any of the property transferred by gift, the wife had an interest in it which was entitled to be excluded in determining the value for gift tax purposes of the transferred property.

■ Upon the second question, the valuation of the groves valued by petitioner's witnesses from $350 to $400 an acre and by the commissioner's witnesses at $1000 an acre for the Jenkins grove to $750 an acre for the Carlton and Whiddon groves, a careful consideration of the evidence as a whole leaves us in no doubt that the finding of the Tax Court, based, as it was, in part upon opinion evidence amounting to little more than a synthetic guess made five years after the critical date, was clearly erroneous.

In rejecting not only the clear, the detailed, the specific evidence of petitioner's witnesses, given by way of opinion as to value derived from local knowledge and experience, but also the undisputed proof of actual sales of comparable property at or about the time in question, to accept in lieu thereof the synthetic report on valuation of the Wauchula Board of Realtors, submitted to the commission by letter of January 18, 1949, signed by the president, the vice-president, and secretary of the Board, the Tax Court plainly erred.

Indeed, when the testimony of the two signers who testified is examined in the light of what they say as to their aims and methods in executing their commission to determine and fix a value for use by the commissioner, it is quite clear that their evidence is without real probative value. Based not upon any experience with selling particular groves or upon knowledge of sales at

Grove property was purchased by the taxpayer for $11,000; $6000 of this amount was represented by two notes which were secured by a mortgage. His wife signed the two notes and the mortgage.

3. Foster v. Thornton, 131 Fla. 277, 179 So. 882.

4. Johnson v. Craig, 158 Fla. 254, 28 So. 2d 696; Foster v. Thornton, note 2, supra.

5. Carlton v. Carlton, 78 Fla. 252, 83 So. 87; Heath v. Heath, 103 Fla. 1071, 82 A.L.R. 537, 138 So. 796; Engebretsen v. Engebretsen, 151 Fla. 372, 11 So.2d 322; DuPree v. DuPree, 158 Fla. 439, 28 So.2d

or about the critical time, the solemn pronouncement of the Board seems to have been the result of their determination in *vacuo* in 1949, of the value the crop on the trees in January, 1944, would then have been estimated to bring. If this hypothetical price fixing method on a precise date without adequate allowance being made for the greatly varying prices which had prevailed in the past and would likely prevail in the future could, under any circumstances, be accepted as a correct measure of value of the land, the estimate of the Board as to the value of the fruit in 1944 does not at all correspond with the facts as proven.

Finally, though it is clear that on January 1, 1944, the prices of fruit had not by any means reached their high and they did not reach it until 1946, the Board priced the groves upon the high prices of 1946, rather than the much lower ones of 1943 and 1944.

We are in no doubt that had a district judge, familiar with the locality, the people, and the conditions, heard the case, his findings would have been completely different. But if they had been the same as these, we should have had no hesitation in holding that in rejecting all the credible, and accepting all the incredible, evidence, his findings and judgment were clearly erroneous.

By the statute now governing appeals from a Tax Court, it is provided in substance that the appeal shall be the same as from a district court.[6]

. The findings upon the first issue are approved. Those complained of upon the second issue are disapproved.

The judgment establishing the deficiency is accordingly reversed and the case is remanded to the Tax Court to redetermine the deficiency in accordance with this opinion. .

907; Strauss v. Strauss, 148 Fla. 23, 3 So.2d 727.

6. "The circuit courts of appeals * * * shall have exclusive jurisdiction to review the decisions of the Tax Court * * * in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury; * * *." 26 U.S.C.A. § 1141(a).