498 F.2d 88
 74-2 USTC P 13,017
 William J. RUSHTON, Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
ESTATE of Elizabeth P. RUSHTON, Deceased, William J.
Rushton, III, and James Rushton, executors,
Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 73-3438.
 United States Court of Appeals, Fifth Circuit.
 July 26, 1974.
Rehearing and Rehearing En Banc
Denied Oct. 8, 1974.
 
 Lee C. Bradley, Jr., Charlott L. Railey, Birmingham, Ala., for petitioners-appellants.
 Scott P. Crampton, Asst. Atty. Gen., Meade Whitaker, Robert S. Lamont, Attys., Tax Div., Dept. of Justice, Lawrence B. Gibbs, Acting Chieft Counsel, I.R.S., Meyer Rothwacks, Chief, Appellate Sec., Dept. of Justice, Jonathan S. Cohen, Arthur L. Bailey, Attys., Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.
 Before BELL, GOLDBERG and CLARK, Circuit Judges.
 GOLDBERG, Circuit Judge:
 
 
 1
 The Commissioner and the taxpayers come to this Court embroiled in a controversy over the interpretation and application of a concept in securities valuation commonly known as 'blockage.' When any property is assessed for the purpose of imposing a federal tax-- whether income, gift, or estate-- the dollar amount assigned to it rests, at least theoretically, on the notion of fair market value. See Champion v. Commissioner of Internal Revenue, 5 Cir. 1962, 303 F.2d 887. The Treasury Regulations on the Gift Tax are typical in defining that ideal as 'the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts.'[1] The blockage rule provides that, when securities are being valued, the size of the holding, and not simply the quoted price per share is a relevant consideration.[2] This principle requires recognition of the market fact that a block of shares may be so large in relation to the usual trading volume or to the number of shares outstanding that it would necessarily go at a discount.[3]
 
 
 2
 On four days in 1966 and 1967, William J. Rushton made 16 gifts of the common stock of Protective Life Insurance Company to members of his family or to trusts established for their benefit.[4] In their gift tax returns for those years, Reshton and his wife, who had consented to having one-half of the gifts to third parties treated as gifts made by her, valued the stock at the amount that would have been realized, in the opinion of experts,[5] from the sale of four blocks of the security. The blocks consisted of an aggregation of the gifts made on each day-- 1,422, 5,000, 6,400, and 2,000 shares, respectively. The Commissioner disallowed the blockage discount based on the combination of gifts into daily totals; and, since taxpayers had furnished no information on the blockage effect of the individual gifts, he issued a notice of deficiency based on a valuation of the stock at the mean between the bid and asked price per share on the date of each gifts.[6] Taxpayers filed separate petitions in the Tax Court challenging the assessment of additional gift duties; and they have prosecuted these consolidated appeals under 26 U.S.C. 7482 from a decision of that court upholding the Commissioner's determinations.[7] We affirm.
 
 
 3
 The Commissioner has not easily come to an acceptance of blockage in any form. The gift and estate regulations promulgated under the revenue acts of 1926 and 1932 specifically forbade consideration of the size of a block of securities in determining the fair market value per share.[8] In a few early court skirmishes the Commissioner managed to protect this position from outright rejection, see Roth v. Wardell, 9 Cir. 1935, 77 F.2d 124; Richardson v. Helvering, 1935, 65 App.D.C. 105, 80 F.2d 548; but in the late 1930's the then Board of Tax Appeals and the district courts began to accept and to rely on expert testimony concerning blockage discounts in reviewing deficiency assessments and determining refunds, notwithstanding the regulatory strictures. In a series of decisions issued during this period every Court of Appeals confronted with the question upheld the action of the lower tribunals. See, e.g., Phipps v. Commissioner of Internal Revenue, 10 Cir. 1942, 127 F.2d 214; Helvering v. Maytag, 8 Cir. 1942, 125 F.2d 55; Bull v. Smith, 2 Cir. 1941, 119 F.2d 490; Helvering v. Kimberly, 4 Cir. 1938, 97 F.2d 433; Commissioner of Internal Revenue v. Shattuck, 7 Cir. 1938, 97 F.2d 790. This Circuit was no exception, and in Page v. Howell, 5 Cir. 1940, 116 F.2d 158, 159, we endorsed the blockage concept, holding that:
 
 
 4
 'Every element that would tend to increase or diminish the value of the gift as a whole should be considered. The formula incorporated in (the regulations) no doubt is fair and just, if nothing else is shown than the average value, measured by transactions on the stock exchange, but it is not conclusive. The (their of fact) was entitled to consider the question as to whether the value of such a large block of stock could be accurately determined by the average price obtained from the sale of approximately one-tenth of the number of shares donated.'
 
 
 5
 Evidently concluding that regulations which courts refuse to honor are the equivalent of no regulations at all, the Commissioner initially retreated into silence by deleting all comment on blocks of securities from the valuation provisions. However, as the judicial attitude hardened from the permitting the trier of fact to consider the blockage effect to a rule requiring that it be considered, see Champion v. C.I.R., supra 303 F.2d at 893, the Internal Revenue Service conceded defeat, and in 1958 promulgated new regulations explicitly recognizing the possibility of a blockage discount:
 
 
 6
 'In cases in which it is established that the value per bond or share of any security determined on the basis of the selling or bid and asked prices as provided under . . . this section does not represent the fair market value thereof, then some reasonable modification of the value determined on that basis or other relevant facts and elements of value shall be considered in determining fair market value . . . In certain exceptional cases, the size of the block of securities made the subject of each separate gift in relation to the number of shares changing hands in sales may be relevant in determining whether selling prices reflect the fair market value of the block of stock to be valued. If the donor can show that the block of stock to be valued, with reference to each separate gift, is so large that it could not be liquidated in a reasonable time without depressing the market, the price at which the block could be sold as such outside the usual market, as through an underwriter, may be a more accurate indication of value than market quotations. Complete data in support of any allowance claimed due to the size of the block of stock being valued should be submitted with the return.'[9]
 
 
 7
 Taxpayers contend that the quoted provision, when read in the context of the entire valuation scheme set out in the regulations, contemplates a blockage discount calculated on the basis of the aggregate of the gifts made on any single day. A contrary interpretation, they argue, would render the regulations invalid. The Commissioner responds that, fairly read, the regulations forbid the aggregation of gifts for valuation purposes and that any finding of blockage must be based on the effect of offering only the number of shares in each separate gift for sale on the date of transfer. We agree with the Tax Court that the Government has presented the more reasonable version of the regulatory scheme. As so interpreted, the valuation standards decreed by the Service are a legitimate exercise of discretion under the statute.
 
 
 8
 Bringing an aggregation principle within the language of the regulation is a task requiring considerable ingenuity, and taxpayers have constructed a suitably involved argument: Granted, the regulation looks to what each gift would fetch if sold as a block through an underwriter or by another mechanism of secondary distribution.[10] This single gift provision, however, does not by its terms preclude an expert evaluation of the market based in part on the price depression that would have resulted from the actual sale during the valuation period of the shares comprising the other gifts, or from the knowledge of their presence overhanging the market. Since this procedure is both possible under the regulation and required for a reasonable valuation, it should be engrafted upon the regulatory scheme by judicial surgery.
 
 
 9
 This effort at construction, though inventive, suffers from rather serious flaws; for any aggregation, even the roundabout variety urged by taxpayers here, moves very strongly against the thrust of the regulation. We note that by its explicit terms 25.2512-2(e) permits the application of a blockage discount for any shares only upon a showing that 'the block of stock to be valued, with reference to each separate gift, is so large' that its liquidation would depress the market price. Hence, the blockage concept must be triggered in the first instance by the size of each particular gift, without consideration of companion donations. This is a strange prerequisite indeed for a regulatory scheme which allegedly contemplates the ultimate aggregation for valuation purposes of all gifts of a single stock made in one day.[11] It is equally clear, and equally damaging to taxpayers' position, that the regulation requires the production of expert evidence on the price which each gift would bring if sold, not in some hypothetical market, but under the conditions actually obtaining at the time of gift. An aggregation principle, however, directly contradicts the regulatory intent of appraisal in a realistic market; for, under such a system, the question becomes not what would each block have returned if sold in the market existing at the time of valuation, but rather what would that same block have brought in a fictitious market, one flooded by the other gifts.
 
 
 10
 Taxpayers argue that their method of valuation, even if forbidden by regulation, is nevertheless supported by the reasoning of this and other Circuits in opinions recognizing blockage discounts as part of a fair tax assessment. Far from supporting that position, however, the logic of those decisions militates against aggregation. The blockage cases of the 1930's and '40's, including this Court's opinion in Page v. Howell, supra, refused to apply the IRS regulations because their provisions ignored market fact. Taxpayers now seek to distort that reasoning into a requirement that the assessor consider market fictions. They recognize, as they must, that the Code commands and the regulations validly enforce the separate valuation of gifts. If that independent valuation is to take place in the context of a realistically reconstructed market, as the cases seem to require, no consideration can be given to other donations of shares, precisely because the additional gifts were not placed for sale. Realistic valuation can cut both ways, and taxpayers cannot reasonably complain when the principles giving rise to blockage are applied to limit the concept as well.
 
 
 11
 In their reply brief taxpayers largely abandon the arguments based on interpretation of the regulation and fairness under the statute. They rely instead on the supposed voice of authority, contending that aggregation of the gifts of securities is required by the decision of this Court in Page v. Howell, supra. We have in Page, however, no blueprints, plans, or specifications to control our construction here, and properly viewed, that opinion provides taxpayers with cold comfort. First, it is far from clear that Page either endorsed or required the consideration of combined gifts. Judge Foster, writing for the Court, referred throughout that brief opinion to a single 'gift' made in trust for the benefit of the taxpayer's four children. The text indicates that the panel may well have considered the stock as one donation in fact, and not simply as a single entity for the purpose of gauging market effect. In the present case, however, there can be no question but that we are dealing with sixteen separate gifts.
 
 
 12
 More importantly, the Page court operated within a regulatory framework which permitted greater room for judicial action. By 1940 the Commissioner had removed all reference to blockage discounts from the regulations. Therefore, once the Court had determined that a just assessment under the statute required consideration of blockage, it was free to prescribe any scheme it deemed appropriate. The Commissioner's retreat from the field had invited a judicial advance. However, with the promulgation of the present gift regulation, directly confronting blockage discounts and permitting their application only to separate gifts, a court's task becomes quite limited.
 
 
 13
 Alternatives to the Commissioner's (rules) are of course available. Improvements might be imagined. But we do not sit as a committee of revision to perfect the administration of the tax laws. Congress has delegated to the Commissioner, not to the courts, the task of prescribing 'all needful rules and regulations for the enforcement' of the Internal Revenue Code. 26 U.S.C. 7805(a). In this area of limitless factual variations, 'it is the province of Congress and the Commissioner, not the courts, to make the appropriate adjustments.' Commissioner v. Stidger, 386 U.S. 287, 296, 87 S.Ct. 1065, 1071, 18 L.Ed.2d 53. The role of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner.
 
 
 14
 United States v. Correll, 1967, 389 U.S. 299, 306-307, 88 S.Ct. 445, 449, 19 L.Ed.2d 537. See also Bingler v. Johnson, 1969, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695.
 
 
 15
 Taxpayers do not dispute the validity, indeed the necessity under the statute, of valuation per single gift. Given that procedure and the market realities discussed above, we cannot say that the Commissioner's blockage scheme is unreasonable. Hence, even were we to conclude that the Page court felt aggregation to be the best of all possible systems, that would give us no justification for tampering with a rational, though perhaps imperfect, regulation. What Page might have accomplished in the face of regulatory silence, we are forbidden by Correll from requiring in defiance of the present reasonable rule.
 
 
 16
 As if in anticipation of our holding in favor of the Commissioner on the point of aggregation, taxpayers prepared a fall back position. Granting that in the application of the blockage rule account should be taken only of the gifts to separate donees, they contend that the Tax Court improperly ignored expert evidence on the market effect of eight individual gifts.[12]
 
 
 17
 The Commissioner's notice of deficiency assessed all shares at the mean between the bid and asked price on the date of gift. This is the standard propounded by the regulation for the valuation of little-traded securities in the absence of a showing of exceptional circumstances;[13] and under the terms of the regulation, the taxpayer must demonstrate both the appropriateness and extent of any discount below that standard price per share claimed on account of blockage. See 26 C.F.R. 25.2512-2(e). This location of the burden is no more than an administrative recognition of long established judicial rules. From the earliest cases permitting consideration of the blockage effect, courts have emphasized that this market phenomenon cannot simply be assumed from the size of the block being valued, but rather must appear from expert evidence on all aspects of the market. See Maytag v. Commissioner, 10 Cir. 1951, 187 F.2d 962. Moreover, this Court has explicitly held, in the context of a taxpayer's challenge to the valuation of donated securities, that,
 
 
 18
 a taxpayer has the burden not merely of showing that the commissioner's assessment was erroneous, but that the value the taxpayer took as the basis of his claim . . . was right . . ..
 
 
 19
 Krauss v. United States, 5 Cir. 1944, 140 F.2d 510, 511-512. See also Helvering v. Taylor, 1935, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623.
 
 
 20
 The Tax Court found that the donors here had not only neglected to produce significant data on the market effect of any single gift, but had even failed to raise a sustantial question as to the accuracy of the Commissioner's assessment once the aggregation concept had been rejected. Since 26 U.S.C. 7482(a), which empowers this panel to hear appeals from that specialized tribunal, instructs us 'to review the decisions of the Tax Court . . . in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury,' we can disturb the fact finding below on the sufficiency of the petitioner's evidence only if that conclusion be clearly erroneous. See McGee v. Commissioner, 5 Cir. 1971, 444 F.2d 110.
 
 
 21
 Taxpayers allege that the testimony of their expert witness, Rucker Agee,[14] illuminates just such an obvious mistake on the part of the trier of fact. We disagree. On direct examination Agee expressed no opinion as to the price per share which any single gift would have brought in a market free of the other donations. The only figures suggested came in the course of cross-examination, where he was unable to provide any definite quotations and relied instead on estimates within a range of values, price ceilings, and references to figures 'slightly' above or below specific prices. Agee conceded that he had given little thought to the market effect of individual gifts and consequently could not provide exact values.
 
 
 22
 I arrived at this opinion (on the blockage effect of the aggregate) in conference with my partners, and we did not consider what a single . . . block would liquidate at. We were not confronted with that question at that time.
 
 
 23
 Five years later, without availability of my four partners to confer with and consider the condition of the market at that time, I cannot answer the question (on single gift blockage) . . . more definitely . . .. (Tr. 106-7)
 
 
 24
 Though the Tax Court cannot arbitrarily reject detailed and carefully formulated expert testimony in favor of a blind faith in the Commissioner's assessment, Carlton v. Commissioner, 5 Cir. 1951, 190 F.2d 183, the denial of a blockage discount on any individual gifts cannot be faulted here given the admittedly inaccurate and hastily developed opinion of taxpayers' only authority. Valuation outside the actual market place is inherently inexact, but we will not compound its uncertainty by giving controlling effect to such hazy recollections.
 
 
 25
 Taxpayers have not coordinated their legal and evidentiary attacks sufficiently to merit victory either before the Tax Court or on this appeal. Where the evidence was strong-- on the market effect of the combined gifts-- the law did not permit its consideration. Where the law was clearly in their favor-- on the possibility of blockage discounts for the separate gifts-- the evidence introduced by taxpayers did not support its application.
 
 
 26
 Affirmed.
 
 
 
 [1]
 26 C.F.R. 25.2512-1
 
 
 [2]
 The relation of the holding to the supply available in the market is relevant in the valuation of any commodity. See Mertens, Law of Federal Income Taxation 59.15. A particular rule has been articulated in the area of securities, however, due to the frequency of stock transfers, the prevalence of stock ownership, and the discrepancies so often arising between the reduced block price and usual price per share
 
 
 [3]
 Of course, the number of shares being valued may be so great a percentage of the number outstanding that their transfer would convey effective control of the enterprise. In such a case the logic of blockage requires not a discount, but rather the inclusion of a control premium in the tax assessment. See 26 C.F.R. 25.2512-2(e). Cf. Blanchard v. United States, S.D.Iowa 1968, 291 F.Supp. 348
 
 
 [4]
 Taxpayers and the Commissioner agree on the date and size of each gift:
 Date of Gift and Donee No. of Shares
---------------------------- -------------
January 3, 1966
---------------
Elizabeth P. Rushton 237
William J. Rushton, III 237
James Rushton 237
William J. Rushton, IV Trust 237
Deakins F. Rushton Trust 237
Tunstall P. Rushton Trust 237
June 15, 1966
-------------
William J. Rushton, III 2,500
James Rushton 2,500
January 3, 1967
---------------
Elizabeth P. Rushton 400
William J. Rushton, III 1,800
James Rushton 3,000
William J. Rushton, IV Trust 400
Deakins F. Rushton Trust 400
Tunstall P. Rushton Trust 400
April 7, 1967
-------------
William J. Rushton, III 1,250
James Rushton 750
 
 
 [5]
 The information came from Sterne, Agee & Leach, a brokerage firm located in Birmingham, Alabama, Protective Life's principal place of business. Sterne, Agee is the primary market maker in Protective Life Stock, an unlisted security
 
 
 [6]
 The Commissioner asserted deficiencies in the gift taxes of William J. Rushton for the taxable years 1966 and 1967 in the amounts of $984.37 and $893.25, respectively, and deficiencies in the gift taxes of Elizabeth P. Rushton for those years in the amounts of $984.38 and $866.25
 
 
 [7]
 Elizabeth P. Rushton died during the course of this litigation, and the executors of her estate have been substituted as parties
 
 
 [8]
 Treasury Regulation 79, Article 19 (1934 ed.) (gift tax); T.R. 80, Article 13(3) (1934 ed.) (estate tax)
 
 
 [9]
 26 C.F.R. 25.2512-2(e). The analogous estate tax provision appears at 26 C.F.R. 20.2031-2(d)
 
 
 [10]
 The references in the regulation to 'liquidation in a reasonable time' and selling 'outside the usual market, as through an underwriter' represent the Commissioner's acceptance of the sophisticated judicial gloss on the original blockage rule, which developed during the 1940's. In the midst of their original infatuation with blockage discounts, the courts came to recognize that a 'skillful broker' could by distribution over a short period of time dispose of a block of securities at a price near or equal to the market level. Where this was possible, the market price, or something very close to it, would be an accurate reflection of the value on the date of gift. See Richardson v. Commissioner, 2 Cir. 1945, 151 F.2d 102, cert. denied 326 U.S. 796, 66 S.Ct. 490, 90 L.Ed. 485; Bull v. Smith, 2 Cir. 1941, 119 F.2d 490
 The 'skillful broker' concept was followed by the market wise proposition that the amount obtained by an underwriter or broker for a secondary distribution of a security, minus the commission, might even more faithfully reflect the real value of a large block of stock. See Mertens, Law of Federal Gift and Estate Taxation 8.06, n. 26.
 
 
 [11]
 Taxpayers, obviously stymied by the statutory requirement that, 'if the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift,' have attempted no aggregation beyond the daily totals. See 26 U.S.C. 2512(a)
 
 
 [12]
 These were gifts of 2500 shares each to William J. and James Rushton on June 15, 1966; and six gifts totalling 6400 shares made on Januart 3, 1967
 
 
 [13]
 26 C.F.R. 25.2512-2(c)
 
 
 [14]
 Mr. Agee, a partner in the brokerage firm of Sterne, Agee & Leach, Inc. of Birmingham, Alabama, testified extensively at trial. There has been no challenge to his competence either as a broker or a trader in Protective Life stock