547 So.2d 943 (1989)
Mario Mack SANCHEZ and Mario Jose Sanchez, Appellants,
v.
Zary Maria SANCHEZ DE DAVILA, Maliano Ramon Sanchez Franco, Luris Sanchez Gago, Mario Jose Sanchez Castillo, Zaida De Jesus Sanchez De Gonzalez, Irama Maria Sanchez Graffe De Arredondo, Omaida Maria Sanchez Gago, Osiris De Jesus Sanchez De Hernandez, Maria Conception Sanchez Cedeno, Mario Rafael Sanchez Blanco, Rogelia Maria Sanchez Vargas and Olga Maria Sanchez Gonzalez and Abner Solomon, As Personal Representatives of the Estate of Mario Sanchez, Appellees.
No. 88-101.
District Court of Appeal of Florida, Third District.
April 4, 1989.
Rehearing Denied September 14, 1989.
*944 Steel, Hector & Davis and W. Peter Burns and F. Clay Craig and Robert W. Goldman, Miami, for appellants.
Cesar R. Camacho, Horton, Perse & Ginsberg and Mallory Horton, George J. Shamas, Miami, for appellees.
Before HUBBART, NESBITT and LEVY,[*] JJ.
HUBBART, Judge.
This is an appeal from a final summary judgment which orders, in accord with Venezuelan law, that the funds of certain Totten trust bank accounts be turned over to the personal representative of the estate of the decedent who created the subject bank accounts, rather than to the surviving beneficiaries of the subject accounts in accord with Florida law. This judgment was entered below in ancillary probate proceedings brought by twelve of the putative children of the decedent. The beneficiaries of the Totten trust bank accounts appeal, and, for the reasons discussed below, we agree with their position that Florida law controls and reverse.

I
The relevant facts of this case are undisputed. The decedent, Mario Sanchez, was a Venezuelan national. Beginning in 1979, he visited the United States and opened a series of Totten trust bank accounts totaling approximately $2,000,000 with the Chase Manhattan Bank, in Miami, Florida. The accounts were opened in the name of Mario Sanchez "in trust for" two of his sons, Mario Jose Sanchez Santamaria and Mario Mack Sanchez Santamaria. In 1983, the decedent died intestate in Venezuela. Following his death, his two aforementioned sons, as beneficiaries, converted the Totten trust accounts into separate accounts in their own names at the Chase Manhattan Bank. Meanwhile, twelve other putative children of Sanchez made a "forced heirship" claim in the probate of Sanchez' estate in Venezuela in which they asserted a right to share in the Totten trust bank accounts in Miami. It is undisputed that under Venezuelan law these children, along with the two aforementioned sons, were entitled to a pro rata share of these accounts.
Ancillary probate proceedings were, accordingly, instituted by the twelve children in the circuit court below. A curator was appointed for the claimed Dade County assets of the estate, and a temporary injunction was issued freezing the funds from the Totten trust accounts. On appeal, this court affirmed the injunction noting that "[t]he trial court has yet to resolve the underlying dispute" between the parties as to whether the funds of the Totten trusts were to be distributed to the two sons as the surviving account beneficiaries under Florida law or equally among all of the fourteen children under Venezuelan law. Sanchez v. Soloman, 508 So.2d 1264 (Fla. 3d DCA 1987). Upon remand, the trial court ruled in the summary judgment under *945 review that Venezuelan law controlled, that all of the children of the decedent were entitled to equal shares in the Totten trust accounts, and that the Chase Manhattan Bank should turn over the funds on deposit to the estate's personal representative. The two sons, who were the named beneficiaries of the Totten trusts, appeal.

II
Contrary to the trial court's ruling, we conclude that Florida law, not Venezuelan law, controls the disposition of the Totten trust accounts in this case, and that, accordingly, the two sons who have brought this appeal are entitled to the proceeds of the accounts under Florida law because they are the named beneficiaries of the accounts. We reach this result based on the following briefly stated legal analysis.
It is well settled in Florida that the disposition of a joint bank account, including a Totten trust, is governed by the law of the situs of the account regardless of the domicile of any party to the account. Seng v. Corns, 58 So.2d 686, 687 (Fla. 1952); Lieberman v. Silverstein, 393 So.2d 565, 566 n. 2 (Fla. 3d DCA 1981).[1] Section 655.55, Florida Statutes (Supp. 1988), codifies this choice of law rule as to bank accounts located in Florida:
"The law of this state ... shall govern all aspects, including without limitation the validity and effect, of any deposit account in a branch or office in this state of a financial institution ... regardless of the citizenship, residence, location, or domicile of any other party to the contract or agreement governing such deposit account, and regardless of any provision of any law of the jurisdiction of the residence, location, or domicile of such other party, whether or not such deposit account bears any other relation to this state...."
"Deposit account," as employed in the above statute, is specifically defined to include, as here, a "Totten trust account." § 655.55(3)(b), Fla. Stat. (Supp. 1988).[2] It is, of course, well settled that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Restatement (Second) of Conflicts of Law § 6(1) (1971).
In the instant case, the subject Totten trust bank accounts are located in a bank in Miami, Florida, and accordingly Florida law must govern their disposition  even though (a) Venezuela is the domicile of the decedent who created the trusts, and (b) Venezuelan law is contrary to Florida law on the disposition of the trusts when, as here, the creator of the trusts dies. Seng; Lieberman; § 655.55, Fla. Stat. (Supp. 1988). Moreover, under Florida substantive law, it is undisputed that the beneficiaries of a Totten trust are entitled to the proceeds of the subject bank account upon the death of the creator of the trust. Seymour v. Seymour, 85 So.2d 726, 727 (Fla. 1956); In re Estate of Solnick, 401 So.2d 896, 897 (Fla. 4th DCA 1981). Plainly, then, the appellant sons, as the beneficiaries of the subject Totten trust, are entitled to the funds in the said trusts  not all the children of the decedent, as the trial court ruled.
The final summary judgment under review is therefore reversed and the cause is remanded to the trial court with directions to enter judgment for the appellants herein.
Reversed and remanded.
NOTES
[*] Judge Levy participated in the decision but did not hear oral argument.
[1] Quintara v. Ordono, 195 So.2d 577 (Fla. 3d DCA), cert. discharged, 202 So.2d 178 (Fla. 1967), relied on by the trial court, announces no choice of law rule concerning the disposition of a Totten trust bank account, and, accordingly, is inapplicable to this case.
[2] The entire statute is specifically made retroactive and applicable "to deposit accounts ... entered into before, on, or after July 1, 1988" with one exception not applicable here. § 655.55(6), Fla. Stat. (Supp. 1988). This retroactive application did not alter the law of Florida and is therefore entirely constitutional; this being so, the statute applies to the Totten trust created in the instant case in 1979.