570 So.2d 996 (1990)
Oscar Augusto Solis CARDENAS, Appellant,
v.
Maria Marta Colomer Caceres De SOLIS, Appellee.
No. 89-2973.
District Court of Appeal of Florida, Third District.
September 11, 1990.
Rehearing Denied January 3, 1991.
Herbert A. Warren and Richard A. Warren, Miami, for appellant.
Shutts & Bowen, and Robert P. Major, Miami, for appellee.
Before HUBBART, COPE and LEVY, JJ.
*997 HUBBART, Judge.
This is an appeal by the defendant Oscar Augusto Solis Cardenas from a temporary injunction issued by the circuit court below freezing half the funds contained in certain of the defendant's bank accounts in Miami, Florida. This injunction was issued at the request of a Guatemalan court in order to preserve the status quo pending disposition of a domestic relations suit brought in that court by the plaintiff Maria Marta Colomer Caceres de Solis against the defendant [the plaintiff's husband] in which ownership of the funds in the subject bank accounts is presently being litigated. We conclude that: (1) the trial court had authority to enter such a temporary injunction under the Florida law of comity, and (2) Section 655.55(1), Florida Statutes (1989), does not preclude the application of comity principles as a legal basis for entering the subject temporary injunction. We accordingly affirm.

I
The plaintiff and the defendant are both citizens of the Republic of Guatemala and were married there in 1957. On September 6, 1989, the plaintiff Mrs. Solis filed suit against the defendant Mr. Solis in the Second Family Court of Guatemala. The suit seeks fifty percent of the property acquired by the parties during their marriage under Guatemalan community property law, but does not seek a divorce. The suit petition alleges that the business income of the defendant Mr. Solis is deposited primarily in banks in Miami, and that Mr. Solis has threatened to transfer or dispose of these funds in order to defeat Mrs. Solis' entitlement to her one-half share therein. Specifically, the petition asks the Family Court to
"request the necessary judicial assistance, under an offer of reciprocity, from the honorable competent judges of the State of Florida, United States of America, that they may order banking, savings and loan or other financial entities of said state, to embargo all deposits existing at the present name [sic] under the name of Mr. OSCAR AUGUSTO SOLIS CARDENAS pending the final resolution of the declaration I have moved the court to issue, and that those deposits be modified so as to be registered under the names of both spouses, i.e., adding my name, in the understanding that fifty percent (50%) thereof belongs to each of us, and that, therefore, Mr. SOLIS CARDENAS may not henceforth dispose of more than that fifty per cent (50%), nor benefit from the interest thereon in excess of that same proportion."
A.4-5.
Thereafter, the Guatemala Family Court entered an ex parte injunction freezing the defendant Mr. Solis' bank accounts in Guatemala and Miami, Florida and set a "conciliatory hearing" in the case for a month later. Recognizing, however, that it had no jurisdiction to freeze the Miami bank accounts, the Family Court entered a subsequent "petition to the Court of the State of Florida" requesting assistance from the appropriate Florida court to enforce this injunction; this petition states that "[i]t would be appreciated and is hereby requested that the Florida Court assi[s]t the Courts of Guatemala by entering whatever injunction or order may be necessary under the Florida law to effect and carry out the injunction this Court has issued."
The plaintiff Mrs. Solis then filed a verified complaint for injunctive relief in the circuit court below "to enforce a foreign decree pursuant to the laws of international comity and specific request of the Second Family Court of the Republic of Guatemala." Based on the Guatemalan court order, the plaintiff sought a temporary injunction against the defendant's various bank accounts in Miami at Southeast Bank, Sun Bank, Republic International Bank of New York, and Flagship Bank of Miami. The circuit court granted a temporary injunction as requested on an ex parte basis and later, on a motion to dissolve, modified the injunction after a full hearing so as to freeze one half of the funds in the subject bank accounts  the amount the plaintiff lays claim to in the Guatemalan Family Court. The defendant appeals.

*998 II
The defendant attacks the validity of the temporary injunction on two grounds. First, he contends that Florida comity law precludes a Florida court from honoring the request of the Guatemalan court to enter the subject temporary injunction pending final disposition of the domestic relations suit in Guatemala; and second, he contends that, in any event, Section 655.55(1), Florida Statutes (1989) precludes the application of Florida comity law as a legal basis for temporarily freezing the defendant's bank accounts in Miami. For the reasons that follow, we cannot agree.

A
It is well settled that, as a general rule, only the final judgments of courts of a foreign country are subject to recognition and enforcement in this country, provided certain jurisdictional and due process standards are observed by the foreign court; non-final or interlocutory orders of foreign courts, however, are generally not entitled to such recognition or enforcement. See Restatement (Second) Conflict of Laws § 98 comment c (1971); Bishop & Burnette, United States Practice Concerning the Recognition of Foreign Judgments, 16 Int'l Law. 425, 430-31 (1982); Westin, Enforcing Foreign Commercial Judgments and Arbitral Awards in the United States, West Germany and England, 19 L. Pol'y Int'l Bus. 325, ___, (1987); Zaphiriou, Transnational Recognition and Enforcement of Civil Judgments, 53 Notre Dame L.Rev. 734, 747 (1978); Note, Recognition and Enforcement of Foreign Judgments in Florida and the Status of Florida Judgments Abroad, 31 U.Fla.L.Rev. 588, 620 (1979). As stated in Ogden v. Ogden, 159 Fla. 604, 609, 33 So.2d 870, 874 (Fla. 1947):
"We do not understand the rule of international comity to require the courts of this country to recognize and give effect to the judgments of an English Court that are not final. If permitted to reason by analogy, it may be said that such is the effect of the full faith and credit clause of the Constitution of the United States as to judgments of other States."
We discern that one of the underlying reasons behind this salutary general rule is that it would be an undue burden for American courts to become entangled in the otherwise unfamiliar intricacies of foreign court practice by recognizing or enforcing the temporary court orders of another country, orders which are subject to being vacated, withdrawn, or superseded. As a consequence, American courts have generally avoided recognizing or enforcing such interlocutory orders and have waited until the litigation abroad has resulted in a final order before considering whether to give effect to a foreign court decree.
There has been a distinct trend, however, in recent years in favor of recognizing some limited exceptions to this general rule. American courts are now "more likely to recognize and enforce modifiable foreign judgments (usually those involving family and matrimonial matters), even though foreign interlocutory decrees are still generally not recognized or enforced." Underhill, Denying Enforcement of a Foreign Country Injunction  Solution or Symptom?: Pilkington Bros. v. AFG Industries, Inc., 17 Conn.L.Rev. 703, 709 (1985) (footnotes omitted); see Herczog v. Herczog, 186 Cal. App.2d 318, 9 Cal. Rptr. 5 (Dist.Ct.App. 1960); Adamsen v. Adamsen, 151 Conn. 172, 195 A.2d 418 (1963); Restatement of Foreign Relations Law of the United States §§ 494-96 (Tent.Draft No. 4, 1983); cf. Restatement (Second) of Conflict of Laws § 109 comment d (1971). As stated in Pilkington Bros. P.L.C. v. AFG Industries, 581 F. Supp. 1039, 1045 (D.Del. 1984) (citations omitted):
"A generally recognized rule of international comity states that an American court will only recognize a final and valid judgment. That rule, however, has not been strictly applied to cases involving enforcement of modifiable judgments. Modifiable foreign orders can be granted extraterritorial effect even though they might not be `final' for purposes of res judicata."
Moreover, this court has recently enforced a temporary injunction issued by the court of a foreign country (St. Vincent and *999 the Grenadines) against a debtor who had defaulted on a bank debenture; a private receiver, appointed by the creditor bank under the terms of the debenture, applied for and obtained a temporary injunction from a St. Vincent court prohibiting the debtor corporation and its officers from dealing in any way with the corporation's assets "wherever situated" until, presumably, the bank could collect on its defaulted debenture. The corporation nonetheless filed suit in Florida to quiet title on its real estate in Dade County; the receiver then petitioned for and obtained a writ of quo warranto in Florida which, in effect, enforced the St. Vincent injunction and prohibited the corporation from dealing with its corporate real estate situated in Dade County. We affirmed this decree based on Florida comity principles. Belle Island Inv. Co. v. Feingold, 453 So.2d 1143 (Fla. 3d DCA), cause dismissed, 459 So.2d 1039 (Fla. 1984). It has therefore been correctly stated in Pilkington Bros. P.L.C. v. AFG Industries that
"rather than create a per se rule against recognition and enforcement of foreign interim injunctions, the Court will analyze the particular facts of [a] case under general principles of international comity. There may be a case, under different circumstances, in which a foreign nation `interim' injunction could be recognized."
581 F. Supp. at 1045.
These limited exceptions to the general rule barring the enforceability of interlocutory foreign court orders appear to be based on compelling public policy considerations. There is obviously a strong public policy in favor of enforcing, where practicable, foreign court decrees, final or interlocutory, which (1) seek to support a spouse or minor child in a domestic relations suit, or (2) protect a creditor in collecting on a valid debt  provided the foreign court observed basic due process standards and otherwise had jurisdiction over the parties. It is felt that spouses and debtors abroad ought not to be able to walk away from their foreign court-imposed obligations by spiriting away their money or assets to the United States.
Although not free from doubt, we conclude that the above comity principles point in favor of enforcing the Guatemalan temporary injunction in the instant case. This is so because (1) the suit in Guatemala is a domestic relations suit in which the plaintiff seeks, in effect, support from her husband in the form of one half of the parties' marital property; (2) the defendant husband ought not to be able to escape his financial obligations to his wife in Guatemala by secreting the parties' marital assets in Miami banks; and (3) the Guatemalan temporary injunction may be enforced with ease in Florida pending final resolution of the domestic relations suit in Guatemala. Beyond that, the Guatemalan court has, without dispute, jurisdiction over the parties and, in our view, has observed basic due process standards. Although the subject injunction was issued ex parte based on the plaintiff's moving papers, this is not unknown under our law provided, as here, a reasonably prompt hearing is accorded to the defendant thereafter. See Fla.R.Civ.P. 1.610.
The defendant, however, argues that comity principles should not apply in this case because the Guatemalan court has no subject matter jurisdiction over the Florida bank accounts. This consideration, however, is hardly decisive else no foreign court injunctions covering realty or personalty in Florida could ever be enforced in a Florida court. It is clear, however, that certain injunctions of this nature may be enforced in Florida. Belle Island Inv. Co. As stated in Restatement (Second) of Conflict of Laws § 102 comment g (1971):
"It can therefore be assumed that a decree rendered in a foreign nation which orders or enjoins the doing of an act will be enforced in this country provided that such enforcement is necessary to effectuate the decree and will not impose an undue burden upon the American court and provided further that in the view of the American court the decree is consistent with fundamental principles of justice and of good morals."
The defendant further argues that comity principles should not apply in this case because the underlying cause of action in Guatemala  division of marital property without divorce  is not recognized in Florida. Florida recognizes, however, an analogous cause of action for alimony and child *1000 support unconnected with divorce. § 61.09, Fla. Stat. (1989). The fact that Guatemala grants more relief  i.e., division of marital property  to a petitioning spouse in such an action does not, in our view, make the action so pernicious as to defeat comity. Belle Island Inv. Co., 453 So.2d at 1145; see Hunt v. BP Exploration Co. (Libya), 492 F. Supp. 885, 900 (N.D.Tex. 1980); Toronto-Dominion Bank v. Hall, 367 F. Supp. 1009, 1016 (E.D.Ark. 1973); Note, Foreign National Judgments: Recognition and Enforcement of Foreign Judgments in Florida and the Status of Florida Judgments Abroad, 31 U.Fla.L. Rev. 588, 618 (1979).
Without dispute, a final decree rendered in the Guatemalan suit herein can be enforced in Florida based on principles of comity. This being so, we see no reason why the Guatemalan temporary injunction may not be enforced in Florida so as to freeze the status quo and thereby preserve the Guatemalan court's jurisdiction to render such a final decree.

B
Finally, we reject the defendant Mr. Solis' argument that Section 655.55(1), Florida Statutes (1989), as interpreted in Sanchez v. Sanchez De Davila, 547 So.2d 943 (Fla. 3d DCA), rev. denied, 554 So.2d 1168 (Fla. 1989), precluded the trial court, in any event, from applying the doctrine of comity to enforce the subject Guatemalan injunction. Under this statute, the law of Florida [excluding the Florida law of comity] must govern when determining all aspects, including "the validity and effect," of a deposit account held in a bank in Florida; in the instant case, however, Florida banking law, in accord with the law throughout the country, only gives the defendant Mr. Solis a presumptive right of possession to the bank accounts in question subject to the legitimate claims of third parties,[1] and, unlike Sanchez, is entirely silent as to the ultimate ownership thereof. In Sanchez, Florida law specifically provided that the ownership of the Totten Trust bank accounts in question passed to the beneficiaries of the account upon the death of the settlor of such accounts, and, consequently, such law was held to govern as opposed to Venezuelan law which equally divided the Totten Trust accounts among all of the settlor's children upon the settlor's death. In the instant case, there is no comparable Florida law governing the ultimate ownership of the bank accounts herein; consequently, Sanchez is inapplicable to this case.
This being so, we see no prohibition under the above statute against applying the law of Guatemala as adjudicated by a Guatemalan court to determine the ownership of the funds deposited in the bank accounts herein; plainly, comity principles must control in this case in the absence of any Florida law determining who is the ultimate owner of such funds. For the above-stated reasons, the temporary injunction under review is, in all respects,
Affirmed.
NOTES
[1] See Seymour v. Seymour, 85 So.2d 726, 727 (Fla. 1956) (Florida "banking laws ... were designed primarily to regulate banks and are not necessarily conclusive of the ownership of the deposited money."); §§ 658.61, 665.069, Fla. Stat. (1989); Michie On Banks and Banking § 38 (1983).