# Third District Court of Appeal

## State of Florida

Opinion filed August 6, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-537
Lower Tribunal No. 12-36984
_____


**Jorge Raul Cermesoni,**
Appellant,

vs.

**Carolina Cermesoni Maneiro,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Sarah I. Zabel, Judge.

Rosenthal Rosenthal Rasco Kaplan and Eduardo I. Rasco and William L. Tucker, for appellant.

Baron Breslin & Sarmiento and Jerrell A. Breslin, for appellee.


Before SHEPHERD, C.J., and SALTER and EMAS, JJ.

SALTER, J.

This appeal turns on the applicability of the injunction bond requirement, Florida Rule of Civil Procedure 1.610(b), when a Florida court plays an ancillary role and the primary judicial forum is in another country. Finding no error in the Florida order at issue here, we affirm.

The Dissolution of Marriage in Argentina and the Letters Rogatory

The appellee, Ms. Maneiro, filed for a dissolution of her marriage to the appellant, Mr. Cermesoni, in Buenos Aires, Argentina, in 2011. Both spouses are citizens and residents of Argentina, but Mr. Cermesoni allegedly owns and controls certain bank accounts at Wells Fargo Bank and Citibank in Miami.

On Ms. Maneiro's motion in the proceeding in Argentina, the Argentinian Court (a) directed that one-half of the Miami-based accounts be frozen until further order of the court, and (b) issued letters rogatory[1] seeking assistance of the appropriate United States court(s) in establishing and enforcing the Argentinian Court's freeze order.

Ms. Maneiro then filed a circuit court action in Miami seeking to give effect to the letters rogatory. In November 2012, the circuit court granted Ms. Maneiro's emergency motion for a temporary injunction[2] freezing the bank accounts

_____

[1] See Inter-American Convention on Letters Rogatory, Jan. 30, 1975, 1483 U.N.T.S. 288, 14 I.L.M. 339; Additional Protocol to the Inter-American Convention on Letters Rogatory, May 8, 1979, 1438 U.N.T.S. 322, 18 I.L.M. 1238 (signed and ratified by member nations of the Organization of American States, including the Republic of Argentina and the United States); 28 U.S.C. § 1781.

identified in the letters rogatory. Mr. Cermesoni alleges that the resulting injunction has frozen approximately $3,000,000.00, while requiring Ms. Maneiro to post a cash bond of only $100.00.

The Motion to Increase Bond

Mr. Cermesoni moved the court in Miami to increase the injunction bond, and the court conducted an evidentiary hearing on the motion. Mr. Cermesoni testified that the injunction had subjected him to existing and continuing damages exceeding $227,000.00. The Miami court concluded that its role under existing precedent was merely to "enforce the interlocutory foreign order in the same manner as a final order," under principles of international comity applicable to family cases. Because a bond is not required to enforce a final order of a foreign court under such principles, the court held, there is no reason to require a bond when enforcing the foreign court's interlocutory order. The circuit court denied Mr. Cermesoni's motion to increase the bond, and this appeal followed.

Analysis

Mr. Cermesoni's motion sought, and the order subject to this appeal denied, modification of the injunction to condition it upon a higher bond. We thus have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(B).

---

[2]  Mr. Cermesoni appealed the injunction order, Cermesoni v. Maneiro, Case No. 3D13-1680, but that appeal was dismissed for lack of jurisdiction.

3

Mr. Cermesoni argues that Florida law requires an injunction bond sufficient to protect the adverse party against those "costs and damages sustained by the adverse party if the adverse party is wrongfully enjoined." Fla. R. Civ. P. 1.610(b); Parker Tampa Two, Inc. v. Somerset Dev. Corp., 544 So. 2d 1018 (Fla. 1989) (limiting recoverable damages for wrongful injunction to the amount of the injunction bond). If this was a case in which a Florida court was the primary judicial forum, we might well find Mr. Cermesoni's argument persuasive.

The controlling circumstance in this case, however, is that Florida's jurisdiction is ancillary, not primary. The primary judicial forum is the civil court in Buenos Aires, Republic of Argentina, which issued the letters rogatory. The Miami court merely carried out the cross-border request for assistance by recognizing the Argentinian Court's ruling and entering the injunction directed to specific Florida assets. The Miami court's role on this record was confined to these in rem matters, and it did not address the merits of Ms. Maneiro's suit for dissolution of marriage, the parties' ultimate interests in the assets subject to the injunction, or the custody of their two minor children.

As the trial court properly observed, we have repeatedly approved the enforcement in Florida of temporary injunctions issued by foreign courts as a matter of international comity. "A foreign decree 'is entitled to comity, where the parties have been given notice and the opportunity to be heard, where the foreign

4

court had original jurisdiction, and where the foreign decree does not offend the public policy of the State of Florida.'" Intrinsic Values Corp. v. Superintendencia de Administracion Tributaria, 806 So. 2d 616, 619 (Fla. 3d DCA 2002) (quoting Nahar v. Nahar, 656 So. 2d 225, 229 (Fla. 3d DCA 1995), rev. den., 664 So. 2d 249 (Fla. 1995)).

In Cardenas v. Solis, 570 So. 2d 996, 998 (Fla. 3d DCA 1990), we surveyed the cases and other authorities recognizing limited exceptions to the "general rule" that "only the final judgments of courts of a foreign country are subject to recognition in this country, provided certain jurisdictional and due process standards are observed by the foreign court; non-final or interlocutory orders of foreign courts, however, are generally not entitled to such recognition or enforcement." (citations omitted). In that case, we recognized that one such limited exception allowed the enforcement in Florida of a temporary injunction entered in Guatemala in a dissolution of marriage case, protecting Ms. Solis's claims to one-half of the marital property, because "the defendant husband ought not to be able to escape his financial obligations to his wife in Guatemala by secreting the parties' marital assets in Miami banks . . . ." Id. at 999.

In the case at hand, Mr. Cermesoni may or may not have "secreted" the parties' marital assets at the banks in Miami, but the verified motion for recognition of the injunction in Miami included an allegation that Mr. Cermesoni

5

threatened to "deplete all U.S. bank accounts in which he has an interest, and remove them from [Ms.] Maneiro's reach." In a global marketplace in which liquid banking assets can be moved in microseconds, unless a foreign creditor can identify and obtain limited Florida jurisdiction over assets of the debtor, "the ultimate final judgment may become a hollow victory for the litigant." Otto's Heirs v. Kramer, 797 So. 2d 594, 597 (Fla. 3d DCA 2001).

This brings us to the injunction bond. The tribunal that oversees such a requirement is, in the present case, the civil court in Buenos Aires. Mr. Cermesoni has not addressed his reasons for seeking an increased bond in Miami rather than in Buenos Aires, but an affidavit in the prior appeal here sheds light on the point:

> Matters related to Family Law, aimed at protecting the property of the economically weakest party in a divorce proceeding, do not require economic guarantees or bonds in the Argentine Republic. The party [Ms. Maneiro] is in a position of inferiority and has no access to the management of the marital property, and thus, her right of access to justice for the protection of her rights would otherwise be undermined. Mrs. Maneiro has requested to proceed in court without incurring in [sic] legal costs or fees in the Argentine Republic in order to continue with the proceedings for the protection of the marital property, pursuant to the rights established by the Argentine National Constitution.[3]

If the foreign court which has jurisdiction over the subject matter and the non-resident parties does not deem it appropriate to impose a bond, we see no

---

[3] Affidavit of attorney Ana Mirta Rosenfeld, July 4, 2013, in the appellee's appendix in Cermesoni v. Maneiro, Case No. 3D13-1680, given judicial notice under Buckley v. City Miami Beach, 559 So. 2d 310, 313 n.1 (Fla. 3d DCA 1990).

reason the Florida court should insinuate itself into the case and impose its own local requirement under Florida Rule of Civil Procedure 1.610(b). "When a court is confronted with an action that would involve it in a serious interference with or usurpation of [the] continuing power [of another court to supervise and modify its injunctions], 'considerations of comity and orderly administration of justice demand that the nonrendering court should decline jurisdiction . . . and remand the parties for their relief to the rendering court, so long as it is apparent that a remedy is available there.'" Mann Manufacturing, Inc. v. Hortex, Inc., 439 F.2d 403, 408 (5th Cir. 1971) (citation omitted). To reiterate, the court in Miami merely accorded recognition and enforcement to the foreign court's order; it has not addressed the merits of the parties' claims to marital property, legal fees and expenses, or other issues in the dissolution case.[4]

The Florida court's refusal to increase the minimal injunction bond does not preclude Mr. Cermesoni from seeking relief in the primary proceeding in Buenos Aires. But for the reasons detailed in this opinion, the trial court committed no error in denying Mr. Cermesoni's motion.

Affirmed.

---

[4] The Miami case was filed and assigned to the civil division, not the family division, because it involves letters rogatory, not the dissolution of the parties' marriage in Florida.