# Third District Court of Appeal

## State of Florida

Opinion filed January 13, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1649
Lower Tribunal No. 16-20463
_____

**Rafael Antonio Olvera Amezcua,**
Appellant,

vs.

**Hector Armando Vejar Cortez,**
Appellee.

An appeal from a nonfinal order from the Circuit Court for Miami-Dade County, Beatrice Butchko, Judge.

GrayRobinson, P.A., and Frank A. Shepherd, and Juan C. Martinez, for appellant.

Andreu, Palma, Lavin & Solis, PLLC, and Yulexy Solis, for appellee.

Before HENDON, MILLER, and BOKOR, JJ.

MILLER, J.

Appellant, Rafael Antonio Olvera Amezcua ("Olvera"), challenges a nonfinal order denying a motion to dismiss, or, alternatively, dissolve a temporary injunction entered in favor of Hector Armando Vejar Cortez ("Vejar"). We have jurisdiction. Fla. R. Civ. P. 9.130(a)(3)(B). After receiving a formal request for assistance from a Mexican tribunal, the lower court recognized and enforced a foreign embargo order, prohibiting the alienation of a condominium unit located in Aventura, Florida. Olvera sought dismissal or, in the alternative, dissolution of the domestic order. Although a hearing was afforded, relief was denied. On appeal, Olvera assigns error in the continuation of the injunction in the absence of service of process.[1] We affirm.

**BACKGROUND**

In mid-2014, Vejar deposited the sum of ten million Mexican pesos in Ficrea, S.A. & C.V., S.F.D., a banking institution organized and headquartered in Mexico. Shortly thereafter, the National Banking and Securities Commission of Mexico ("NBSC") involuntarily dissolved and liquidated the bank, citing investor fraud.

Vejar filed suit in Mexico against Olvera, Ficrea's majority shareholder, seeking to hold him personally liable for the loss of his deposit. The Mexican

---

[1] We summarily reject the further contention that changed circumstances necessitate dissolution. See Tettamanti v. Opcion Sociedad Anonima, 67 So. 3d 356, 357 (Fla. 3d DCA 2011) ("[A] post-recognition collateral attack on the [decree] ordinarily should be directed to the foreign court rather than the Florida court.").

2

tribunal issued a preliminary embargo, enjoining Olvera from transferring certain assets, including a condominium unit located in Aventura, Florida.

The Attorney General of Mexico issued an arrest warrant for Olvera, and, as the warrant remained unserved, the International Criminal Police Organization ("Interpol") published a Red Notice alert. The alert notified cooperating countries of the existence of the warrant and sought the apprehension of Olvera.

Seeking assistance in enforcing the embargo in the United States, the Mexican court issued a letter rogatory directed to the Clerk of Courts of Miami-Dade County. In the document, the Mexican tribunal identified the need to enjoin any transfer of the Aventura property and termed Olvera a "fugitive of [j]ustice."

Vejar also filed suit in Miami-Dade County, seeking to effectuate the letter rogatory by invoking the ancillary jurisdiction of the court for the purpose of issuing a temporary injunction prohibiting the transfer of title of the Aventura condominium. After Vejar made several unfruitful attempts to serve Olvera at two separate residential locations, including the address identified on the embargo, he discovered the condominium was listed for sale. Vejar then sought entry of the injunction without notice.

The lower tribunal scheduled a hearing, and Vejar unsuccessfully attempted to provide Olvera notice of the hearing date. Ultimately, the court, issued the injunction, and, some four years later, Olvera filed a motion to dismiss the case, or,

alternatively, to dissolve the injunction, citing a failure to effect service of process and changed circumstances. Following a hearing, the trial court denied relief, concluding that, absent dissolution of the foreign decree, relief was improvident. The instant appeal ensued.

## STANDARD OF REVIEW

"The standard of review in determining whether a trial court properly refuses to dissolve a temporary injunction is abuse of discretion." Sea Tow Servs. Int'l, Inc. v. Pontin, 973 So. 2d 531, 532 (Fla. 3d DCA 2007) (citations omitted). However, appurtenant legal matters are reviewed de novo. Price v. Taylor, 298 So. 3d 654, 656 (Fla. 4th DCA 2020) (citation omitted).

## LEGAL ANALYSIS

The extraterritorial effect of a foreign decree "depends upon what our greatest jurists have been content to call 'the comity of nations.'" Hilton v. Guyot, 159 U.S. 113, 163, 16 S. Ct. 139, 143, 40 L. Ed. 95 (1895). Comity is meant to solve the dilemma that "[n]o law has any effect of its own force, beyond the limits of the sovereignty from which its authority derived." Id. at 163, 16 S. Ct. at 143.

Although comity "has been fertile in suggesting a discretion unregulated by general principles," in Hilton the Supreme Court "articulated clear rules for the enforcement of foreign judgments in the United States:"

> [W]here there has been opportunity for a full and fair trial abroad before
> a court of competent jurisdiction, conducting the trial upon regular

4

proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh.

William S. Dodge, International Comity in American Law, 115 Colum. L. Rev. 2071, 2075-90 (2015) (quoting Hilton, 159 U.S. at 202-03, 16 S. Ct. at 158). These rules have evolved slightly over the years, and, today, most state courts adhere to the standard promulgated under the Restatement (Second) of Conflict of Law.[2] Under the Restatement,

a decree rendered in a foreign nation which orders or enjoins the doing of an act will be enforced in this country provided that such enforcement is necessary to effectuate the decree and will not impose an undue burden upon the American court and provided further that in the view of the American court the decree is consistent with fundamental principles of justice and of good morals.

---

[2] "The federal doctrine of comity is applicable under Hilton only when a foreign-nation judgment is presented to a federal court having 28 U.S.C. § 1331 federal question jurisdiction. While the opposite result has been urged, Hilton-style federal comity, unlike federal full faith and credit, does not preempt a state's version of comity either in an Erie [Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)]-based federal diversity case, or in a state court case." Robert Laurence, The Role, If any, for the Federal Courts in the Cross-Boundary Enforcement of Federal, State and Tribal Money Judgments, 35 Tulsa L.J. 1, 25 (1999).

Restatement (Second) of Conflict of Law § 102 cmt. g (Am. Law Inst. 1971); see also Nahar v. Nahar, 656 So. 2d 225, 229 (Fla. 3d DCA 1995) ("[A]ny foreign decree should be recognized as a valid judgment, and thus be entitled to comity, where the parties have been given notice and the opportunity to be heard, where the foreign court had original jurisdiction and where the foreign decree does not offend the public policy of the State of Florida.").

In Florida, recognition of international final foreign judgments is governed by statute, while general principles of comity allow for the discretionary enforcement of certain interlocutory rulings. See § 55.604, Fla. Stat. As is relevant to this case, courts have "repeatedly approved the enforcement in Florida of temporary injunctions issued by foreign courts." Cermesoni v. Maneiro, 144 So. 3d 627, 629 (Fla. 3d DCA 2014).

Here, it is uncontroverted Olvera was afforded due process in Mexico and the foreign tribunal possessed original jurisdiction. Further, given the preliminary finding by the NBSC of creditor fraud and the resultant weighty need to preserve assets, along with the pervasive sentiment that debtors ought "not be able to walk away from their foreign court-imposed obligations by spiriting away their money or assets" in the United States, the foreign decree neither offends the public policy of our State nor emburdens our courts. de Pacanins v. Pacanins, 650 So. 2d 1028, 1029-30 (Fla. 3d DCA 1995) (citation omitted).

Olvera, however, assails the failure to perfect service of process in the Miami-Dade County proceedings as fatal to the continuing vitality of the injunction. Undoubtedly, a judge "has the power to issue a temporary injunction prior to service of process upon a defendant." Pascul v. George Davis & Co., 170 So. 2d 466, 467 (Fla. 3d DCA 1965) (citing Smith v. Hous. Auth. of Daytona Beach, 3 So. 2d 880 (Fla. 1941); Thebaut v. Canova, 11 Fla. 143 (1866); 28 Am. Jur. Injunctions § 246). Moreover, here, Vejar strictly complied with the narrow requirements of Florida Rule of Civil Procedure 1.610(a) in seeking relief without notice. See Fla. High Sch. Activities Ass'n, Inc. v. Benitez, 748 So. 2d 358, 359 (Fla. 5th DCA 1999) ("A party seeking injunction may, under certain narrow circumstances, be entitled to receive an *ex parte* hearing on his request provided that he complies with the procedure set forth in Florida Rule of Civil Procedure 1.610."). Thus, the entry of the injunction does not offend any traditional notion of due process.

Further, as Vejar persuasively argues, the role of the lower court, serving in an ancillary capacity to the Mexican tribunal, "was confined to the[] in rem matter[]" of recognizing and enforcing the embargo. Cermesoni, 144 So. 3d at 629. Hence, the court "merely carried out the cross-border request for assistance by recognizing the [Mexican] Court's ruling and entering the injunction directed to specific Florida asset[]." Id. Given the due process afforded in Mexico and the limited role of the court below, while the failure to effect service within the four-year time span is

7

hardly ideal, the lack of personal jurisdiction cannot be deemed, in and of itself, an insurmountable hurdle to the continuation of the injunction. See Archer v. U.S. Bank Nat'l Ass'n, 220 So. 3d 477, 478-79 (Fla. 5th DCA 2017) ("[P]ersonal jurisdiction is not required to initiate a . . . proceeding[] instituted against the subject property [because it is an] in rem proceeding[].") (citations omitted); Cooper v. Gibson, 208 So. 2d 117, 118 (Fla. 4th DCA 1968) ("As a general proposition jurisdiction is either in rem, quasi in rem, or in personam. The former two are based on the location of property within the jurisdiction of the state."); Harris & Co. Advert., Inc. v. Republic of Cuba, 127 So. 2d 687, 693 (Fla. 3d DCA 1961) ("[A] judgment in rem may be entered in the absence of personal jurisdiction in actions on a debt due and owing."). Compare Hamilton v. Hamilton, 142 So. 3d 969, 973 (Fla. 4th DCA 2014) (reversing the denial of a motion to dissolve injunction for lack of personal jurisdiction on breach of contract claim where defendant "had notice, and specially appeared to contest personal jurisdiction") with Smith v. Knight, 679 So. 2d 359, 361 (Fla. 4th DCA 1996) ("A request for a temporary injunction often accompanies the original complaint and service of both are typically accomplished simultaneously. One ground for an ex parte temporary injunction is that to give notice would be to accelerate the injury. Personal jurisdiction is thus not required for a temporary injunction to *issue*.") (citations omitted).

Finally, here, after the letter rogatory issued, despite expending reasonably diligent efforts, Vejar and the Mexican government were unable to ascertain Olvera's whereabouts. Moreover, despite having knowledge of the Mexican embargo, Olvera waited four years to seek dissolution of the injunction. Hence, we decline to lay the blame for the delay in service solely at the feet of Vejar. Instead, we echo the sage words of a court convened long ago,

> for a court ought on motion to dissolve an injunction simply because the plaintiff is grossly negligent in progressing the cause, by permitting it to be continued at rules an unreasonable length of time, whenever such motion is made with reasonable promptness on the part of the defendant. But, if such motion also be unreasonably delayed by the defendant, the court ought not, except under peculiar circumstances, to dissolve the injunction on motion, though the plaintiff has been guilty of gross negligence in progressing his suit.

McCoy v. McCoy, 2 S.E. 809, 824-25 (W. Va. 1887) (citations omitted).

Finding no procedural error, we reject the contention that the refusal to dissolve the injunction was "arbitrary, fanciful, or unreasonable [or that] . . . no reasonable man [or woman] would take the view adopted by the trial court." Canakaris v. Canakaris, 382 So. 2d 1197, 1203 (Fla. 1980) (citation omitted).

Affirmed.